*692
 
 OPINION OF THE COURT
 

 Per Curiam.
 

 In this proceeding we are called upon to review a determination of the State Commission on Judicial Conduct removing from office petitioner, a Justice of the Liberty Village Court, Sullivan County, after finding that all three discrete charges of misconduct in the formal complaint were sustained
 
 (see,
 
 NY Const, art VI, § 22; Judiciary Law § 44). The first charge accused petitioner of making an inappropriate and derogatory remark about certain ethnic and racial groups during a recess in proceedings in his court. The second charge was essentially that petitioner conveyed the appearance that he granted a civil motion pending before him in retaliation against an attorney-Town Justice, whose law firm represented one of the litigants in the civil action, for having decided a traffic case against petitioner’s interests. The third charge concerned petitioner’s failure to maintain adequate records and dockets of dispositions of criminal cases in his court, resulting in his failure to report and remit fines and surcharges to the State Comptroller. After a hearing, the Referee sustained Charges II and III, but not Charge I. The majority of Commission members determined that all three charges had been sustained and that the appropriate sanction was petitioner’s removal from office. After a de nova review of the record, we find that the Commission’s determination sustaining all three charges is supported by the preponderance of the evidence, and that the sanction of removal is warranted.
 

 Petitioner contends that the Commission failed to sustain its burden of proof as to all three charges and that the sanction of removal is not warranted. With respect to Charge I, the Commission found and the testimony established that during a break in proceedings before his court, petitioner stated — in the presence of a Legal Aid attorney and legal interns — that he recalled a time when it was safe for young women to walk the streets "before the blacks and Puerto Ricans moved here”. Petitioner in his testimony admitted awareness of a pending controversy between that Legal Aid attorney and another Judge who was a good friend of petitioner’s, and that he believed the Legal Aid attorney at whom the remark was directed was Hispanic. When an Assistant District Attorney who had overheard the remark privately commented to petitioner that the remark was inappropriate and that the controversy had taken a toll on the attorney, peti
 
 *693
 
 tioner replied, "I know. That’s why I said it”. The Commission was entitled to reject petitioner’s less offensive version of his remark and his protestations that it was not intended to be derogatory. Petitioner admitted it was directed at the Legal Aid attorney and admitted telling the Assistant District Attorney it was made to annoy that attorney.
 

 We are in complete agreement with the Commission’s determination that a deliberate and calculated remark of this nature, even if isolated, "casts doubt on [petitioner’s] ability to fairly judge all cases before him”, and seriously violated the governing rules related to his duty to uphold the integrity and impartiality of the judiciary and to avoid even the appearance of impropriety
 
 (see,
 
 Code of Judicial Conduct Canons 1, 2 [A]; 3 [A] [3] [22 NYCRR 100.1, 100.2 (a); 100.3 (a) (3)]).
 

 The second charge arose out of petitioner’s handling of a plaintiff’s motion for judgment in a civil case pending before him. The defendant was represented by a law firm, one of whose partners was a local Town Court Justice. While that motion was pending, petitioner learned that that Town Court Justice had dismissed traffic charges filed against the driver of a car that had been involved in an auto accident with petitioner. When petitioner was told of the dismissal, he remarked to the arresting officer — referring to that Justice — "It’s a wheel. It goes around, and maybe someday I can do the same for him”. Petitioner admitted making this statement. Petitioner’s innocent explanation for that remark was rightfully rejected by the Commission. Petitioner told an Assistant District Attorney how angry and upset he was about that Justice’s ruling, using expletives, and stating he was politically more powerful. Further, his Court Clerk testified to overhearing petitioner tell an attorney he was so angry about the ruling that he intended to grant the plaintiff’s motion for judgment in the pending civil case because the defendant was represented by that Justice’s law firm. Petitioner thereafter granted the plaintiff judgment.
 

 Whether petitioner actually decided the plaintiff’s motion on the merits in that case — as he contends — is largely irrelevant to the charge, because the harm inured when he indicated he would use his judicial powers to satisfy a personal vendetta, a classic instance in which "an appearance of such impropriety is no less to be condemned than is the impropriety itself’
 
 (see, Matter of Spector v State Comma, on Judicial Conduct,
 
 47 NY2d 462, 466;
 
 see also, Matter of
 
 
 *694
 

 Cunningham,
 
 57 NY2d 270, 274-275). Petitioner created the impression that he was using his judicial office to retaliate, and thus failed to avoid the appearance of impropriety and to conduct himself in a manner that promotes public confidence in the impartiality and integrity of the judiciary
 
 (see,
 
 Code of Judicial Conduct Canons 1, 2 [A]; 3 [22 NYCRR 100.1, 100.2 (a); 100.3]).
 

 As to Charge III, there is no dispute that over a two-year period petitioner committed judicial misconduct by failing to maintain adequate records and dockets of dispositions of over 600 criminal cases in his court, and failed to timely remit or report to the State Comptroller fines and surcharges, resulting in an unidentified surplus in his court account of over $22,000, despite repeated reminders, in violation of applicable rules
 
 (see,
 
 UJCA 2020, 2021 [1];
 
 *
 
 Village Law § 4-410; Vehicle and Traffic Law § 1803;
 
 see also,
 
 Code of Judicial Conduct Canons 1, 2 [A]; 3 [B] [1], [2] [22 NYCRR 100.1, 100.2 (a); 100.3 (b) (1), (2)];
 
 Matter of Lenney, 71
 
 NY2d 456;
 
 Matter of Petrie v State Commn. on Judicial Conduct,
 
 54 NY2d 807;
 
 Matter of Cooley,
 
 53 NY2d 64). The Commission’s reference to petitioner’s lack of understanding of rudimentary principles of law such as the difference between a conviction and a dismissal was supported by petitioner’s own testimony and did not constitute a finding of uncharged misconduct. Rather, it was used to explain and substantiate the petitioner’s conduct in the third charge of the formal complaint.
 

 Petitioner’s remaining points are equally unpersuasive. There is nothing in the record to support his claim that the Commission violated a duty to conduct a fair investigation of the charges by failing to contact or call certain potentially exculpatory witnesses regarding Charges II and III. Any such objection should have been brought before the Commission in the first instance, so that its staff would have had the opportunity to explain or rebut it. Thus, we cannot consider the effect on the Commission’s determination had petitioner’s accusation of a biased investigation been substantiated
 
 (see,
 
 Judiciary Law § 44 [4] [Commission’s duty to disclose exculpatory evidentiary data];
 
 Matter of Benjamin, 77
 
 NY2d 296). Also, assuming petitioner was guaranteed the right to effective
 
 *695
 
 assistance of counsel in a proceeding which might result in his removal from judicial office
 
 (but see, Matter of Sasson v Commissioner of Educ.,
 
 127 AD2d 875, 876), we find he received effective representation and that his contentions to the contrary relate only to his attorneys’ strategies, which would not provide a basis for reversal even in a criminal case.
 

 Finally, in view of the cumulative, serious judicial misconduct established here, we find that removal is supported by the record and is not excessive.
 

 Accordingly, the determined sanction of removal should be accepted, without costs, and petitioner should be removed from his office of Justice of the Liberty Village Court.
 

 Chief Judge Kaye and Judges Simons, Titone, Bellacosa, Smith and Levine concur in Per Curiam opinion; Judge Ciparick taking no part.
 

 Determined sanction accepted, etc.
 

 *
 

 While the complaint charged petitioner with violating the nonexistent UJCA 2020 (1), we find that it was clear to petitioner during these proceedings that the reference was to section 2021 (l)’s remittal of funds requirements, and that there was no due process denial from this typographical error.