*655
 
 OPINION OF THE COURT
 

 Per Curiam.
 

 Petitioner, a Judge of the County Court, Onondaga County, asks us to review a determination of the State Commission on Judicial Conduct, sustaining four of seven charges of misconduct and removing him from office (see, NY Const, art VI, § 22; Judiciary Law § 44). The Commission concluded that petitioner failed to maintain the “high standards of conduct” necessary to uphold the integrity of the judiciary (22 NYCRR 100.1; see, Code of Judicial Conduct Canon 1); acted in a manner inconsistent with “the integrity and impartiality of the judiciary” (22 NYCRR 100.2 [A]; see, Code of Judicial Conduct Canon 2 [A]); used his position to advance his own private interests (22 NYCRR 100.2 [C]; see, Code of Judicial Conduct Canon 2 [B]); failed to act in a “dignified and courteous” manner (22 NYCRR 100.3 [B] [3]; see, Code of Judicial Conduct Canon 3 [A] [3]); engaged in conduct manifesting a bias based upon race, gender, age and national origin (22 NYCRR 100.3 [B] [4]; see, Code of Judicial Conduct Canon 1); and initiated an ex parte communication with an attorney for the purpose of resolving a pending case (22 NYCRR 100.3 [B] [6]; see, Code of Judicial Conduct Canon 3 [A] [4]).
 

 After a three-day evidentiary hearing, the Referee found against petitioner on six of the seven charges. The Referee determined that petitioner, while attempting to influence a disposition, made derogatory racial remarks about a crime victim (charge I); displayed intemperate behavior and pressed a prosecutor to offer a plea for petitioner’s own personal convenience (charge II); used vulgar language to characterize a criminal defendant’s statements at sentencing (charge III); made disparaging remarks about Italian-Americans (charge IV); failed to disclose his relationship with a witness appearing before him (charge VI); and testified at a proceeding with reckless disregard for the truth (charge VII).
 

 A majority of the Commission sustained the Referee’s findings with respect to charges I, II, IV and VII, dismissed the remaining charges and determined that petitioner should be removed. While all nine members present sustained charges I and IV, they divided on the remaining charges and on the issue of sanction. Three members found the evidence insufficient to support charge II and three members found the evidence insufficient to support charge VII. Two members voted for censure rather than removal.
 

 
 *656
 
 Although petitioner admits some wrongdoing, he contends that the Commission failed to sustain its burden of proof on certain charges, and that the sanction of removal is excessive in light of his “12-year unblemished” record. Having reviewed the record de novo, we conclude that the Commissioner’s determination is supported by a preponderance of the evidence, and that, the sanction of removal is appropriate.
 

 With respect to charge I, the evidence establishes that petitioner made derogatory racial remarks about a crime victim in an attempt to induce a plea offer. While attending a charity event, petitioner initiated a conversation with a prosecutor concerning a pending, four-defendant murder case. During that conversation, he urged the prosecutor to “be reasonable” in offering pleas to two of the defendants, and that he should not worry about “giving away” the case because no one cared, since the 67-year-old murder victim was “just some old nigger bitch.” These words, as well as the context in which they were uttered, are indefensible. Petitioner’s racially charged assessment of the case not only devalued the victim’s life but also cast doubt on the integrity and impartiality of the judiciary and, by itself, puts into question petitioner’s fitness to hold judicial office
 
 (Matter of Assini,
 
 94 NY2d 26, 29-30).
 

 Although petitioner admits the impropriety of his remarks, he asserts that they were private, isolated statements that were not intended to influence a disposition. He claims that the prosecutor was frustrated because another Judge had suppressed the confession of one of the defendants, and that he was concerned about having to offer a plea to a codefendant in exchange for his cooperation. In an apparent attempt to alleviate the prosecutor’s concerns, petitioner asked him whether, in offering a plea, the District Attorney’s office might be perceived as not caring about the victim. The Referee, however, having had the opportunity to assess petitioner’s responses firsthand, rejected his rationalized version of the remarks and we, like the Commission, uphold that determination
 
 (see also, Matter of Schiff,
 
 83 NY2d 689, 692-693;
 
 Matter of Esworthy,
 
 77 NY2d 280, 282;
 
 Matter of Agresta,
 
 64 NY2d 327, 330;
 
 Matter of Kuehnel v State Commn. on Judicial Conduct,
 
 49 NY2d 465, 468-469).
 

 Moreover, petitioner’s disparaging remarks were not isolated. In 1996, petitioner was at a charity dinner when the Oneida County District Attorney, an Italian-American, greeted him and asked him how his reelection campaign was progressing. When petitioner complained about having to run against an
 
 *657
 
 opponent, the District Attorney replied, “some of us have to run for office and others get it handed to them on a silver platter.” Petitioner retorted, “You know how you Italian types are with your Mafia connections.” Two people seated at petitioner’s table witnessed the exchange. One, also an Italian-American, testified that she was offended by petitioner’s remarks, while the other, a fellow Judge, admonished petitioner. Petitioner not only concedes the impropriety of his comments but also admits to having made similar ethnically charged comments to his opponent during an election campaign. He maintains, however, that the District Attorney’s implication that he had not “earned” his position as Judge provoked the attack, which was nothing more than private banter. The Commission rightfully rejected petitioner’s excuse, as such language, whether provoked or in jest, manifested an impermissible bias that threatens public confidence in the judiciary
 
 (see, Matter of Esworthy, supra,
 
 77 NY2d, at 282;
 
 Matter of Agresta, supra,
 
 64 NY2d, at 330).
 

 Charge II arises from petitioner’s equally unseemly conduct during jury deliberations in a rape case. Fearing protracted deliberations, petitioner began to engage in intemperate behavior on the Bench. In an outburst of profanity, petitioner declared that he detested Utica — where the trial was being held — and wished to return to Syracuse because it was “men’s night out.” He accused the prosecutor of “overcharg[ing]” the case and pressed her to offer a plea to a misdemeanor charge so that he could “get out of this fucking black hole of Utica,” threatening to declare a mistrial if she refused. Although petitioner concedes that he failed to act in a dignified and courteous manner, he denies any attempt to coerce a plea offer. Instead, he maintains that his “banter” reflected his concern over a possible error at trial. Once again, however, the Referee rejected petitioner’s defensive version, and we uphold that determination. In any event, the “harm inured when [petitioner] indicated he would use his judicial powers to satisfy a personal [interest], a classic instance in which ‘an appearance of such impropriety is no less to be condemned than is the impropriety itself’ ”
 
 (Matter of Schiff, supra,
 
 83 NY2d, at 693, quoting
 
 Matter of Spector v State Commn. on Judicial Conduct,
 
 47 NY2d 462, 466). As a Judge, petitioner was duty-bound to preserve the decorum of the courtroom
 
 (see,
 
 22 NYCRR 100.3 [B] [3]) and avoid abusing his judicial authority to advance private interests
 
 (see,
 
 22 NYCRR 100.2 [C]). His failure to do so is amply supported by the record.
 

 
 *658
 
 Finally, as to charge VII, the evidence demonstrates petitioner’s lack of candor during his testimony as a character witness in a criminal trial. Petitioner testified that he had discussed the defendant with two named attorneys when, in fact, he had not.
 

 “[I]n view of the cumulative, serious judicial misconduct established here,” we conclude that removal is an appropriate sanction
 
 (Matter of Schiff, supra,
 
 83 NY2d, at 695). Petitioner’s judicial record cannot excuse racial epithets and ethnic slurs in the official and quasi-official context in which they were uttered, attempts to influence dispositions, intemperate behavior and false testimony. Recognizing that Judges “ ‘must be held to a higher standard of conduct than the public at large,’ ” we conclude that petitioner’s pattern of misconduct warrants removal (M
 
 atter of Assini, supra,
 
 94 NY2d, at 31, quoting
 
 Matter of Collazo,
 
 91 NY2d 251, 255).
 

 Accordingly, the determined sanction of removal should be accepted, without costs, and petitioner should be removed from the office of Judge of the County Court, Onondaga County.
 

 Chief Judge Kaye and Judges Bellacosa, Smith, Levine, Ciparick, Wesley and Rosenblatt concur in Per Curiam opinion.
 

 Determined sanction accepted, etc.