96 N.Y.2d 7 (2001)
747 N.E.2d 1272
724 N.Y.S.2d 672
In the Matter of JAMES H. SHAW, JR., a Justice of the Supreme Court, Second Judicial District, Kings County, Petitioner.
STATE COMMISSION ON JUDICIAL CONDUCT, Respondent.
Court of Appeals of the State of New York.
Argued January 3, 2001.
Decided February 20, 2001.
*8 Emery Cuti Brinckerhoff & Abady, P. C., New York City (Richard D. Emery and Ilann M. Maazel of counsel), for petitioner.
Robert H. Tembeckjian, New York City, and Gerald Stern for *9 respondent.
Judges LEVINE, CIPARICK, WESLEY, ROSENBLATT, GRAFFEO and SULLIVAN[2] concur in Per Curiam opinion; Judge ROSENBLATT *19 concurs in a separate concurring opinion; Judge SMITH dissents in another opinion; Chief Judge KAYE taking no part.

OPINION OF THE COURT
Per Curiam.
Petitioner, a Justice of the Supreme Court, Kings County, seeks review of a determination of the State Commission on Judicial Conduct sustaining one of two charges of misconduct against him and censuring him (NY Const, art VI, § 22; Judiciary Law § 44). The Commission determined that petitioner failed to maintain standards of conduct so as to preserve the integrity of the judiciary (22 NYCRR 100.1); failed to avoid impropriety and the appearance of impropriety and to conduct himself at all times in a manner that promotes public confidence in the integrity of the judiciary (22 NYCRR 100.2); and failed to be patient, dignified and courteous with individuals with whom he dealt in an official capacity (22 NYCRR 100.3 [B] [3]).
After an evidentiary hearing, submissions by the parties and oral argument, the Commission determined that petitioner engaged in "inappropriate and demeaning" conduct toward his secretary, Jacqueline Bland. Specifically, the Commission concluded that petitioner made numerous comments to Bland of a sexual nature, repeatedly touched her without her invitation or consent and, on one occasion, pulled her onto his lap and kissed her mouth without her invitation or consent. The Commission determined that because petitioner was 76 years old and was leaving office at the end of 1999, he should be censured rather than removed from office.
Petitioner maintains that Bland, with the aid of her friend and co-worker, Caroline Rucker, fabricated the allegations against him after he reprimanded her for poor work habits. He asserts that the Commission ignored both the testimony of his law clerk and 14 character witnesses. Moreover, petitioner argues that the Referee improperly allowed Bland to testify that she had told "many other people" about petitioner's harassment without requiring her to identify and produce those people to corroborate her story. Pursuant to our plenary review of the record, and upon our evaluation of the *10 Commission's findings and conclusions, we hold that charge I was established by evidence in the record and petitioner's misconduct warrants censure.
Bland testified that on numerous occasions during her employment, petitioner made inappropriate remarks to her about her physical appearance, focusing on certain physical attributes and the way her clothing fit. In addition, petitioner also asked her details about her sex life with her husband and, after her divorce, told her she "should be dating, I should be seeing other men, that I should be having sex, and I should be having sex with him."
Bland also testified that petitioner inappropriately touched her numerous times without her consent. She testified that just prior to Thanksgiving 1985, petitioner
"told me to come into his chambers and he wanted to show me something, and to come around over his shoulder. * * * [H]e pulled me on his lap and he said that I should be * * * comfortable, that I spend a majority of my time here, and then he kissed me and he put his tongue in my mouth."
Part of Bland's testimony was corroborated by Rucker, who reported certain inappropriate comments regarding Bland's physical attributes made by petitioner when she, Bland and petitioner were looking at Bland's wedding photographs.
Petitioner, testifying on his own behalf, denied the allegations, stating that they were false and in retaliation for his having disciplined Bland. Petitioner's law clerk also testified that during the eight years he worked in petitioner's chambers he never saw Bland emerge from petitioner's office upset or angry, except on the one occasion in which she was disciplined. Finally, 14 character witnessesmany of whom were women who worked with petitionertook the stand and testified as to petitioner's strong moral character and excellent reputation in the court system.
The Referee determined that Bland was telling the truth and that petitioner was not. The Commission adopted the Referee's credibility determination and we find no basis to disturb it (see, Matter of Mulroy, 94 NY2d 652, 656; Matter of Assini, 94 NY2d 26, 29).
On February 21, 2000, approximately three and a half months after the Commission made its determination, petitioner *11 moved to "renew/reconsider" it.[1] He based his application on an affidavit from a woman named Shelley Williams dated January 14, 2000. Williams, a former roommate of Rucker, averred that, prior to testifying before the Referee, Rucker told her that she (Rucker) and Bland planned to lodge false accusations against petitioner. On March 7, 2000, the Commission's Deputy Counsel interviewed Williams on the record with Williams' counsel present. Deputy Counsel then opposed petitioner's motion asserting that Williams was not a credible witness as she had lied numerous times in the past. Deputy Counsel included Rucker's March 12 affidavit, in which she denied Williams' allegations. Rucker averred that she and Williams had been friends but, for reasons unrelated to this case, enmity developed between them and Williams had vowed to "get" Rucker.
Deputy Counsel also furnished the Commission with a transcript of his interview with Williams. That transcript is filled with repeated admissions, after recesses in which Williams consulted with her attorney, that earlier deposition testimony was false. It includes a bold assertion that Williams was associated with a "hit man" and that Rucker had sought Williams' assistance in arranging for the murder of Rucker's husband and another Judge.
In light of Williams' bizarre and inconsistent testimony, the Commission, not surprisingly, determined on April 6, 2000 that the new evidence did "not create a reasonable possibility or a probability that [the] Determination would be altered." Petitioner sought review of that determination before this Court. By decision dated June 20, 2000, we unanimously dismissed, sua sponte, the request for review on the ground that
"the Court of Appeals does not have jurisdiction to entertain a request for review of such a determination (see, Matter of Lenney, 70 NY2d 863; NY Const, art VI, § 22; Judiciary Law § 44)" (Matter of Shaw, 95 NY2d 823).
On the review of the determination before us, petitioner now asks that we remand the case to the Commission, arguing *12 again that Williams' newly discovered exculpatory testimony should be heard firsthand by the Referee or the Commission.[2]
The New York State Constitution, Judiciary Law, and our precedents lead to the inescapable conclusion that this Court is limited to reviewing the Commission's determination of censure on the record as it was before the Commission at the time of the original determination. As the June 20, 2000 dismissal reflects, the reconsideration determination is nonreviewable. Thus, the additional evidence sought to be introduced on reconsideration cannot now be considered by this Court in its review of the original determination.
Article VI, § 22 (a) and (d) of the New York State Constitution mandates the conclusion of limited review. Subdivision (a) states that "[t]he commission on judicial conduct shall * * * investigate and hear complaints * * * and, in accordance with subdivision d of this section, may determine that a judge or justice be admonished, censured or removed * * * The commission shall transmit any such determination to the chief judge of the court of appeals * * *. Such judge or justice may either accept the commission's determination or make written request * * * for a review of such determination" (emphasis added). Subdivision (d) provides that "[i]n reviewing a determination of the commission * * * the court of appeals may admonish, censure, remove or retire * * * any judge * * *. In reviewing a determination of the commission * * * the court of appeals shall review the commission's findings of fact and conclusions of law on the record of the proceedings upon which the commission's determination was based" (emphasis added).
The Judiciary Law mirrors these limited review provisions. Section 44 (1) provides that the "commission * * * may determine that a judge be admonished, censured or removed." Section 44 (7) states that "[a]fter a hearing, the commission may determine that a judge be admonished, censured, removed or retired. The commission shall transmit its written determination, together with its findings of fact and conclusions of law and the record of the proceedings upon which its determination is based, to the chief judge of the court of appeals." (Emphasis added.) Section 44 (9) reiterates that "[i]n its review of a determination of the commission, the court of appeals shall review the commission's findings of fact and conclusions of law on the *13 record of the proceedings upon which the commission's determination was based. After such review, the court may accept or reject the determined sanction." (Emphasis added.)
The references in the Constitution and the Judiciary Law to the word "determination" consistently refer to an original determination of admonishment, censure or removal by the Commission. The language is crystal clear that this Court is only empowered to review an admonishment, censure or removal determination. The phrase "on the record of the proceedings upon which the commission's determination was based" unequivocally refers to the record as compiled before the Commission in connection with the initial sanction determination.[3]
Nothing in these provisions confers on this Court jurisdiction to entertain appeals from, or otherwise review, any other orders (such as a denial of a motion to renew or reconsider) issued by the Commission. Our precedents clearly support this view (see, Matter of LaBelle, 79 NY2d 350, 357, n 2; Matter of Lenney, 70 NY2d 863).
The parties did gratuitously include the motion papers and the transcript of Williams' deposition in the record for review of the Commission's original determination. That act, however, does not abrogate our earlier jurisdictional decision, nor does it somehow expand the basis for the Commission's original determination. The Constitution limits our subject matter jurisdiction in this regard; the parties are without authority to stipulate to bring the facts and circumstances of the reconsideration denial before us (see, e.g., Robinson v Oceanic Steam Nav. Co., 112 NY 315, 324). The dissent would ignore the determination of a court or quasi-judicial body presented with a motion to reconsider to reject the "newly discovered evidence" (see, e.g., CPL 440.30 [2], [4]; CPLR 5015 [a] [2]). Under the dissent's analysis, simply considering the motion and its supporting affidavits makes the new "evidence" part of the original determination.
In essence, the dissenter is faced with an insurmountable dilemma arising out of the constitutional and statutory limitations on our powers in this proceedingsolely to review the Commission's determination of guilt and sanctionas this Court recognized in its unanimous dismissal of petitioner's prior review request. The nebulous due process claim petitioner *14 asserts here is indistinguishable from that asserted in the prior motion. There we correctly recognized our jurisdictional restrictions, and the dissent does not explain what has changed to enlarge our powers to review and change the Commission's disposition of a motion to reconsider in the present procedural posture of this matter.
Accordingly, the determined sanction should be accepted, without costs.
ROSENBLATT, J. (concurring).
I am constrained to agree that this Court lacks jurisdiction to review the import of the newly discovered evidence that Justice Shaw presented to the Commission. I write separately to express my concern with a process in which newly discovered allegations of perjury were never heard firsthand by a neutral arbiter.
This is no ordinary case. The Commission's original censure determination was based entirely on the testimony of Jacqueline Bland and Caroline Rucker, each of whom alleged that Justice Shaw engaged in sexual harassment. While review of the censure determination was pending before us, Shelley Williams told Justice Shaw that Rucker admitted to having fabricated the charges along with Bland.
Based on Williams' affidavit, Justice Shaw moved the Commission for reconsideration. As part of his motion he requested that a neutral party (the Referee or the Commission itself) conduct a hearing to evaluate Williams' testimony firsthand before rendering a decision. With no one except Williams' attorney present, Commission Counselthe prosecutorial arm of the Commissioninterviewed Williams on the record. He compellingly impeached Williams' credibility as to various collateral matters. He did not, however, disprove her central allegationthat Justice Shaw had been framed and that the testimony against him was perjured.
Arguing that Williams was not credible, Commission Counsel thereafter opposed Justice Shaw's motion to reconsider. He submitted an affidavit by Rucker (in which she denied Williams' allegations) and a transcript of the Williams interview. Based on these submissions, the Commission denied Justice Shaw's request for a hearing (and for reconsideration generally), holding that the Williams evidence did "not create a reasonable possibility or a probability that [the] Determination would be altered." (Emphasis added.) The Commission thus mingled two wholly distinct evidentiary criteria"possibility" *15 and "probability."[1] Consequently, Williams was never produced before the Commission or the Referee. In the end, Justice Shaw received less consideration than is normally accorded parties in criminal or civil cases who come in with newly discovered evidence. I find this troubling.
When a criminal case defendant moves for reconsideration based on newly discovered evidence, the evidence typically is in the form of a witness affidavit. At that stage, the court may deny the motion summarily only if the new allegation of fact "is conclusively refuted by unquestionable documentary proof" (CPL 440.30 [4] [c]) or there is otherwise "no reasonable possibility that such allegation is true" (CPL 440.30 [4] [d] [ii] [emphasis added]). If the allegations have not been refuted documentarily and there remains a reasonable possibility that the allegation is true, the court must conduct a hearing (CPL 440.30 [5]; see also, People v Staton, 224 AD2d 984; People v Beach, 186 AD2d 935).[2] To gain a new trial, however, the defendant must go further, and adduce testimony at the hearing sufficient to establish that there is a "probability that had [the newly discovered] evidence been received at the trial the verdict would have been more favorable to the defendant" (CPL 440.10 [1] [g] [emphasis added]). A similar practice exists in civil cases when, pursuant to CPLR 5015 (a) (2), a litigant challenges a judgment or order based on newly discovered evidence. Thus, in Pollio Dairy Prods. Corp. v Sorrento Cheese Co. (62 AD2d 1015, 1016), the trial court committed reversible error when it failed to conduct a hearing with regard to newly discovered allegations of fraud and instead decided a CPLR 5015 motion solely on affidavits.
Williams might well have been lying. Based on the parties' submissions to the Commission, however, I cannot rule out the reasonable possibility that she was telling the truth as to the *16 alleged frame-up. The gravity of her allegations called for direct inquiry by a neutral arbiter. I would have voted to remand the matter for that purpose, had we the jurisdiction to do so.
The Commission is of course entitled to create its own standard in dealing with newly discovered evidence. Here, however, it formulated one that is impracticable and as a result the Williams evidence was never adequately considered. This is not to say that the CPL's "reasonable possibility" standard is per se obligatory on the Commission or that the Commission should be governed in all instances by the rationale expressed in Pollio Dairy Prods. Corp. v Sorrento Cheese Co. (supra). Both, however, provide useful guidance and, if followed, would not have resulted in what strikes me as an unsatisfactory resolution.
At oral argument Commission Counsel stated graciously that there is an arguable basis for us to review the newly discovered evidence, perhaps as part of our plenary review of the entire record (see, NY Const, art VI, § 22 [d]; Judiciary Law § 44). Similarly, the Commission, by letter dated May 12, 2000, stated that it has no objection to our doing so. For better or worse, however, our jurisdiction may not be conferred by consent or good faith offers, and I join the majority in concluding that jurisdiction is lacking here. In future cases, the Commission would of course be free to grant the motion to reconsider and render a new determination which may be the same or different from the original one. Under those circumstances, the Court may find an appropriate basis for review. Short of that, if there is to be any judicial review of the Commission's treatment of newly discovered evidence, it would seem necessary to amend the governing statutes if not the Constitution.
SMITH, J. (dissenting).
The Commission on Judicial Conduct, after receiving a report from a Referee, determined, on November 8, 1999, that the petitioner should be censured for sexual harassment. That determination was based on the credibility of the witnesses and, particularly, the credibility of complainants Jacqueline Bland and Caroline Rucker. Subsequent to the Commission's determination, the petitioner moved for reconsideration based on an affidavit by Shelley Williams. In that affidavit, Williams avers that Rucker admitted that she and Bland fabricated the charges against the petitioner. Williams also avers that Rucker attempted to get Williams to support the contention.
*17 Williams was questioned only by the Commission attorney, acting as a prosecutor in this case. The Referee who heard the other witnesses never saw Williams and the Commission itself never heard her testimony. Nevertheless, after submissions from the Commission attorney and the petitioner, the Commission, by decision dated April 6, 2000, denied the motion to reconsider. The Commission stated "that [petitioner's] motion and offer of new evidence do not create a reasonable possibility or a probability that its Determination would be altered."
In his motion for reconsideration by the Commission, the petitioner raised the issue of due process under both the Federal and State Constitutions. Petitioner stated that he "is entitled to confront Ms. Rucker and Ms. Bland with Ms. Williams' testimony. He is entitled to present Ms. Williams as a witness in his defense." In response to a request by the Commission on Judicial Conduct, petitioner waived any bar to the Commission's exercise of jurisdiction caused by his retirement. The Administrator/Counsel to the Commission opposed the motion to reconsider but, in the alternative, argued that the matter should be referred back to the Referee on the limited issue of whether his findings would be affected by the new evidence.
Before this Court, petitioner makes several arguments, including a claim that his due process rights under the Federal and State Constitutions have been violated by the denial of the opportunity to confront Bland and Rucker with the allegations made by Williams. The majority states that it has no authority to review Williams' affidavit or her deposition testimony even though both are a part of the record before us.
I dissent because I cannot agree that this Court has no jurisdiction and no obligation to review the events subsequent to the original decision by the Commission, particularly when the Commission, although denying petitioner's motion for reconsideration, has apparently reviewed that evidence on the merits. Those events are a part of the Commission's determination and there are due process claims concerning the fairness of the proceedings. New York Constitution, article VI, § 22 (d) states, "[i]n reviewing a determination of the commission on judicial conduct, the court of appeals shall review the commission's findings of fact and conclusions of law on the record of the proceedings upon which the commission's determination was based." The reason why this Court should not adhere to its June 20, 2000 order dismissing, sua sponte, petitioner's motion for leave to appeal from the Commission's denial of the motion for reconsideration is because it prevents this Court from *18 performing a constitutional duty to review the determination of the Commission. This Court rather than the Commission is charged with the interpretation of the Federal and State Constitutions.
What is clear is that the Commission has made the proceedings involving Williams a part of this record and a part of its determination. While it states that it has denied the motion for reconsideration, the Commission has, in effect, reconsidered its decision and adhered to it.[1] Because this new evidence, which goes to the heart of its determination, has been considered by the Commission, there is no valid reason why this Court should ignore that evidence. The only possibility of review of the Commission's determination, including its treatment of the contentions of Williams, is this Court.
If this Court concludes that the Commission did not make a determination on the merits of petitioner's due process claims, it can send the matter back to the Commission or hold the appeal in abeyance while the petitioner requests the Commission to make a determination on his due process claims. In Matter of Klein v State Commn. on Judicial Conduct (63 NY2d 895), this Court denied a motion to remand a proceeding to the Commission or to supplement the record on review without prejudice to an application to the Commission to reconsider its decision. This Court held a review in abeyance pending a decision on that application. Similarly here, this Court can hold any decision in abeyance while the petitioner makes a motion before the Commission for a review of his due process claims that the Referee or the Commission should hear Williams' testimony and possibly additional testimony, with both sides participating in the questioning.
Any action by the Commission should be preceded by a continued waiver by the petitioner of any objection to the jurisdiction of the Commission.
Determined sanction accepted, without costs.
NOTES
[1] Although petitioner's motion was untimely, the Commission apparently waived its timeliness rule (see, Rules of Commission on Judicial Conduct [22 NYCRR] § 7000.6 [f] [6]).
[2] The remittal remedy is not within the powers conferred on us by the Constitution or the Judiciary Law (see, NY Const, art VI, § 22 [d]; Judiciary Law § 44 [9]).
[3] Had the Commission granted the motion to reconsider and then adhered to its original determination, that might be an entirely different matter. However, that is not the case before us.
[1] The Commission may have blended the "possibility" of truth standard in CPL 440.30 (4) with the "probability" of ultimate success standards in both CPL 440.10 (1) (g) and CPLR 5015 (a) (2). The possibility standard governs the right to have newly discovered evidence heard by a Judge at a hearing, whereas the probability standard governs whether the Judge should grant a new trial. In any event, here the standard was improperly blended, rendering it undiscernable.
[2] Cf., United States v LaFuente, 991 F2d 1406, 1409 (8th Cir) (remanding to District Court for hearing to determine credibility of "newly discovered" sworn allegations); DeBinder v United States, 303 F2d 203, 204 (DC Cir) (newly discovered confession by defendant's twin brother, as alleged in affidavits by defendant's counsel and mother, should be "tested" at a hearing in open court).
[1] In Corey v Gorick Constr. Co. (271 AD2d 911), the Appellate Division determined that even though the trial court had denied reargument, that court had really granted reargument, reconsidered the facts and adhered to its prior decision. Under CPLR 2221, the adherence to a decision by a trial court, after reconsideration, would be appealable (see also, Rubeo v National Grange Mut. Ins. Co., 93 NY2d 750, 755).
[2] Designated pursuant to NY Constitution, article VI, § 2.