In the Matter of DAVID TROTMAN, Petitioner, v BENJAMIN WARD, as Police Commissioner of the City of New York, et al., Respondents.

First Department, April 20, 1989

## APPEARANCES OF COUNSEL

*Raymond E. Kerno (Barry S. Bendetowies* with him on the brief; *Lysaght, Lysaght & Kramer, P. C.,* attorneys), for petitioner.

*Paul Herzfeld* of counsel *(June Witterschein* with him on the brief; *Peter L. Zimroth, Corporation Counsel,* attorney), for respondents.

## OPINION OF THE COURT

Ross, J.

This is a CPLR article 78 proceeding brought by petitioner, Mr. David Trotman (petitioner), to annul the determination, dated October 6, 1987, of the respondent Police Commissioner of the City of New York (respondent), which dismissed him from the Police Department for misconduct. After reviewing the record, we confirm only so much of the determination as finds the petitioner guilty of misconduct, but we annul the penalty of dismissal, since we find it to be shocking to "one's conscience" *(Matter of Pell v Board of Educ.,* 34 NY2d 222, 240 [1974]), and remand it to the respondent for reconsideration.

After a two-day disciplinary trial, which was held in June and July 1987, and at which New York City Police Officer David Trotman (Officer Trotman) testified in his own defense, an Assistant Deputy Commissioner of Trials (ACT recommended to the Police Commissioner (PC) that Officer Trotman be found guilty of two charges of misconduct, as follows: (1) while in civilian clothes and off duty, wrongfully striking a woman in the face with his fist (Disciplinary Case Record No. 60429/1986); and (2) wrongfully submitting an altered sick return slip and being absent from duty for three days, without leave (Disciplinary Case Record No. 60686/1987). Based upon these guilty findings, the ACT recommended to the PC that, although Officer Trotman had no prior disciplinary record and had earned three awards for excellent police duty, he be dismissed from the Police Department (Department).

Thereafter, in an order, dated October 6, 1987, the PC approved the ACT's recommendations and dismissed Officer Trotman.

Subsequently, on or about December 9, 1987, Officer Trotman (petitioner) instituted, in the Supreme Court, New York County, a proceeding, pursuant to CPLR article 78, challenging the PC's (respondent's) determination of October 6, 1987, *supra.* After service of the answer, since an issue was raised as to whether the determination was supported by substantial evidence, upon the basis of CPLR 7804 (g), an order of the Supreme Court transferred this matter to this court for review *(Collana v Perales,* 123 AD2d 493 [1986]).

The Court of Appeals has held in *Matter of Berenhaus v Ward* (70 NY2d 436, 445 [1987]), that "[i]n matters of police discipline, we must accord great leeway to the [Police] Com-

missioner's determinations concerning appropriate punishment, because he, and not the courts, is accountable to the public for the integrity of the Department". However, this court has unequivocally stated that it does "not perceive * * * our duty, in reviewing the PC's disciplinary determinations, to be that of a rubber stamp" *(Matter of McAvoy v Ward,* 145 AD2d 378, 380). Nor do we interpret *Matter of Berenhaus v Ward (supra)* to say that the PC has unreviewable authority.

We have commented in a number of recent unanimous decisions that "Over the past several years, in our review of the PC's disciplinary determinations, we have found a disturbing pattern of inconsistency of punishment. In other words, while the PC has imposed very lenient punishment for very serious acts of misconduct, he, at the same time, has dismissed officers for committing what would appear to be less serious violations" *(Matter of McAvoy v Ward, supra,* at 380; *see, Matter of Flowers v Ward,* 138 AD2d 242 [1st Dept 1988]; *Matter of Maxwell v Ward,* 145 AD2d 303).

Nowhere is the PC's "pattern of inconsistency of punishment" *(Matter of McAvoy v Ward, supra,* at 380) more glaringly illustrated than in the *Flowers* and *Maxwell* cases *(supra).*

Police Officers Leon Flowers (Officer Flowers) and Winifred Maxwell (Officer Maxwell) were both convicted in departmental trials of more outrageous unprovoked assaults on civilians than the petitioner. However, unlike the petitioner whom the PC dismissed, Officers Flowers and Maxwell were each suspended by the PC for only 30 days, and placed on disciplinary probation for one year.

Following a 1986 disciplinary trial, a Deputy Trial Commissioner (DTC), found Officer Flowers guilty of a number of serious departmental violations, which he had committed, while in uniform and on duty, in New York City's Central Park, and those violations included, as follows, wrongfully, and without just cause: (1) striking a defenseless female civilian in the face with a *nightstick,* and, thereafter, handcuffing and roughly pushing her into a patrol car; (2) waving his nightstick in a threatening and menacing manner at a male civilian; (3) abusing his authority, by issuing summonses to avenge a personal slight; and, (4) operating his assigned Department scooter so recklessly and dangerously, at about 10:00 P.M., in Central Park, as to seriously endanger the lives of two joggers. In his report to the PC, the DTC, after having observed the witnesses testify, concluded:

"The evidence is overwhelmingly clear that [Officer Flowers] overreacted and used unnecessary force over a minor slight. Indeed, this [DTC] is disturbed by [Officer Flowers'] volatile and combative behavior during the incident, which raises serious questions as to his judgment, self-control and stability.

"This [DTC] finds [Officer Flowers'] conduct throughout this incident to be unprofessional and an abuse of authority. It is wholly inappropriate and impermissible for [Officer Flowers] to curse, menace and physically abuse [the female]".

Although Officer Flowers had a prior disciplinary record, and, the petitioner, as mentioned *supra,* had none, the PC retained Officer Flowers as a member of the Department, and dismissed petitioner.

We find the facts, which are detailed *infra,* in the case of Officer Maxwell to be even more egregious than in the case of Officer Flowers, since, in the course of Officer Maxwell's abuse of civilians, he, *inter alia,* took out his off-duty revolver and used it in a threatening manner.

Officer Maxwell was convicted, after a 1986 disciplinary trial, of several serious departmental violations, which he had committed, while in civilian clothes and off duty. In substance, those violations consisted of wrongfully assaulting, injuring, and causing the arrests of two civilians, Messrs. Edwin Quinones (Mr. Quinones) and Herbert Gonzalez (Mr. Gonzalez). The subject incident between Officer Maxwell and those two civilians occurred as a result of their repair of the automobile of Officer Maxwell's fiancée.

The Assistant Deputy Commissioner of Trials, who presided at the disciplinary trial of Officer Maxwell, wrote in his report to the PC, in pertinent part, as follows:

"They [Messrs. Quinones and Gonzalez] both testified that they * * * had come to [Officer Maxwell's fiancée's] apartment * * * so that she could pay them the balance of their fee * * *.

"Gonzalez testified that when he first saw [Officer Maxwell] that night, [Officer Maxwell] was enraged and demanded to know the status of the car * * *.

"Quinones and Gonzalez both testified consistently that [Officer Maxwell] put a gun to Quinones' chest and forcibly removed him from the vehicle * * *.

"Gonzalez and Quinones both testified that when [Officer Maxwell] demanded to be shown the repairs that had been

made, Quinones opened the hood of the car. They also agreed that [Officer Maxwell] tried to close the hood on Quinones' head * * *.

"It is clear that both Quinones and Gonzalez were injured during the incident, as demonstrated by the Aided Card prepared relative to Quinones * * * and the record of Gonzalez' seeking prompt medical treatment".

Furthermore, in his report, the ACT noted that Officer Maxwell's "conduct in the case herein was shocking and outrageous * * *. [Officer Maxwell] struck two innocent persons when he intervened in a business transaction to which he was not a party * * *. Such a gross abuse of public authority for private and apparently vindictive ends cannot be tolerated". Although the ACT had found Officer Maxwell's "conduct * * * shocking and outrageous", he recommended, inter alia, that Officer Maxwell be suspended from duty for 60 days. Thereafter, without explanation, the PC rejected that recommendation, and reduced the suspension to 30 days.

Based upon our examination of the transcripts of the disciplinary trials of the petitioner, Officer Flowers and Officer Maxwell, we find arbitrary, capricious and irrational the PC's dismissal of the petitioner, who struck a female as a result of a dispute, which occurred when the petitioner was backing his private vehicle out of the parking lot of a Queens shopping mall, since the PC only suspended Officers Flowers and Maxwell for 30 days, even though they committed more violent assaults on civilians than petitioner. Obviously, a wrongful assault by a police officer on a civilian is a serious dereliction, and one would expect consistency in the PC's punishment of it.

We held in Flowers (supra, at 243) that his 30-day suspension was "notable * * * for its extreme leniency * * * [and a] disturbing question is raised in our minds as to [Officer Flowers'] fitness for police work". Moreover, we commented in Maxwell (supra, at 304) that the PC's 30-day suspension of that officer was an example of "marked and unfair disparity in the imposition of sanctions".

Although we recognize "the importance and the necessity of strict discipline in the Police Department, a quasi-military organization" (Matter of Bal v Murphy, 55 AD2d 26, 29 [1st Dept 1976], affd 43 NY2d 762 [1977]), that "fact does not give the PC a blank check to be arbitrary, capricious, and irrational in the imposition of discipline, so that 'the punishment

shocks one's conscience' *(Matter of Pell v Board of Educ.,* 34 NY2d 222, 240 * * *)" *(Matter of McAvoy v Ward, supra,* at 381).

Accordingly, determination dated October 6, 1987 of respondent Police Commissioner of the City of New York, which dismissed petitioner, Mr. David Trotman, from the Police Department for misconduct, is unanimously modified, on the law and on the facts, petition is granted to the extent of annulling the penalty, and remanding it to the respondent for reconsideration, and, except as thus modified, the determination is otherwise confirmed, without costs.

MURPHY, P. J., ELLERIN and RUBIN, JJ., concur with Ross, J.; KUPFERMAN, J., dissents in part and would confirm.

Determination of respondent Commissioner, dated October 6, 1987, unanimously modified, on the law and on the facts, petition is granted to the extent of annulling the penalty and remanding it to the respondent for reconsideration and, except as thus modified, the determination is otherwise confirmed, without costs and without disbursements.