In the Matter of MICHAEL CACCHILLO, Petitioner, v CESAR A. PERALES, as Commissioner of the New York State Department of Social Services, Respondent.

Third Department, December 5, 1991

APPEARANCES OF COUNSEL

*Anthony Cagliostro* for petitioner.

*Robert Abrams, Attorney-General (Leslie B. Neustadt* and *Peter H. Schiff* of counsel), for respondent.

**OPINION OF THE COURT**

LEVINE, J.

In May 1989, petitioner's mother, age 86, suffered a stroke and was hospitalized at Kingston Hospital in Ulster County. Petitioner and his sister were notified in early June 1989 that

their mother's Medicare payments would cease because she no longer was receiving acute hospital services and a nursing home placement was necessary. By deed dated June 16, 1989, petitioner's mother transferred her residence to her three children without consideration. Some 10 days later, petitioner applied on his mother's behalf for medical assistance for "24 hr. nursing care" under Medicaid. The Ulster County Department of Social Services (hereinafter County DSS) disallowed the claim. The ground for disallowance was that the house which petitioner's mother had transferred was includable as her asset and, hence, she had resources exceeding in value the resource limitation for Medicaid eligibility. The reason given for not recognizing the conveyance was that the house lost its exempt status when petitioner's mother was transferred from acute hospital care to another level of care in preparation for nursing home placement and, thus, was subject to a presumption that deeding her house to her children was effected to qualify her for Medicaid. Petitioner then appealed the denial of his application to respondent and, after a fair hearing, respondent upheld the determination of initial ineligibility and directed the County DSS "to determine the value of the transferred resource and period of ineligibility". Petitioner then brought this CPLR article 78 proceeding to challenge respondent's determination.

■ We confirm. Under the applicable provision of the Social Services Law in effect during the relevant period, the uncompensated value of a "nonexempt resource" transferred within 24 months of a Medicaid application was includable within the applicant's resources for Medicaid eligibility purposes (Social Services Law § 366 [5] [former (a)]). Such a transfer was presumed to be made for the purposes of qualifying for assistance; however, proof "that the transfer was exclusively for some other purpose" removes the transferred property from the resources of the applicant for purposes of determining eligibility (Social Services Law § 366 [5] [former (b) (2)]). A homestead "which is essential and appropriate to the needs of the household" is statutorily exempt (Social Services Law § 366 [2] [a] [1]). Under respondent's regulations, a homestead loses its exempt status if the owner "is in a medical facility in permanent absence status" and no spouse, child under 21 or dependent relative is living there (18 NYCRR 360-4.7 [a] [1]). An owner is in permanent absence status if "not expected to return home" (18 NYCRR 360-1.4 [k]), and this is presumed if that person "is initially admitted

to acute care and is then transferred to an alternative level of care, pending placement in a residential health care facility" (18 NYCRR 360-1.4 [k] [2]).

Despite petitioner's argument to the contrary, we find that the regulations validly implement the legislative scheme. Only homesteads "essential and appropriate" to the needs of the household are statutorily exempt from being counted as an available resource in determining Medicaid eligibility (Social Services Law § 366 [2] [a] [1]). Obviously, a homestead is no longer essential or appropriate to the needs of a household if it is not being occupied by the owner or member of the owner's household and the owner is in a medical facility and is not expected to return to the home, as the regulations provide. Moreover, in the absence of evidence to the contrary, it is not unreasonable to assume that one who lives in a medical facility, out of acute care but destined for placement in a nursing home, "is not expected to return home", as the regulations also provide (18 NYCRR 360-1.4 [k]). Thus, the regulations reasonably promote and bear a rational relationship to the legislative purpose of limiting the homestead exemption from being counted as an available resource to instances of bona fide use as such by the welfare applicant's household. This is sufficient to sustain the regulations as a valid exercise of administrative authority (see, Matter of Consolidated Edison Co. v Public Serv. Commn., 47 NY2d 94, 102, revd on other grounds 447 US 530; Matter of Medical Socy. v New York State Dept. of Social Servs., 148 AD2d 144, 147, lv denied 74 NY2d 617; see also, Mourning v Family Publs. Serv., 411 US 356, 369).

■ We likewise reject petitioner's contention that the hearing was tainted by the admission into evidence of the County DSS case file on petitioner's mother, over petitioner's objection that the agency had violated State Department of Social Services regulations in failing to comply with his counsel's request for copies of all documents the agency intended to present at the fair hearing (see, 18 NYCRR 358-3.7 [b] [1]). Although the County DSS did not comply with the request, the record establishes that petitioner's counsel was given full access to the agency records in order to prepare for the hearing and that the agency willingly copied documents at his request. Moreover, respondent excluded the single set of documents of which petitioner had not been accorded prehearing disclosure. Under the circumstances, we cannot conclude that it was arbitrary or capricious for respondent not to apply an

exclusionary rule to what was essentially a technical violation of the regulations. Clearly, receiving these records in evidence did not deprive petitioner of a fair hearing and, thus, even if respondent was in error, such error alone is not sufficient to require annulment (see, Matter of Sowa v Looney, 23 NY2d 329, 334-335; Matter of Kirk v Hammock, 119 AD2d 851, 853).

■ Finally, the record contains substantial evidence supporting respondent's determination. The Kingston Hospital progress notes on petitioner's mother provide an evidentiary basis for respondent's finding that she had been transferred from acute care to another level of care while awaiting placement in a nursing home. There was also ample evidence of her deteriorated physical condition requiring nursing home placement. Thus, petitioner's mother was validly presumed to be in permanent absence status (see, 18 NYCRR 360-1.4 [k] [2]), and petitioner's failure to introduce any evidence to rebut the presumption permitted respondent to consider the home of petitioner's mother as a nonexempt resource (see, 18 NYCRR 360-4.7 [a] [1]). Once the home of petitioner's mother lost its exempt status, the transfer of title to her children some 10 days before petitioner applied for Medicaid on her behalf gave rise to a presumption that the transfer was made to qualify for medical assistance (see, Social Services Law § 366 [5] [former (b) (2)]). Respondent could readily find on the evidence at the hearing that the presumption had not been overcome by credible evidence (see, Matter of Cullen v New York State Dept. of Social Servs., 155 AD2d 857, 858; Matter of Lipkin v New York State Dept. of Social Servs., 146 AD2d 964, 965), and there is no basis for us to disturb the manner in which the evidence was weighed and issues of credibility resolved by the administrative agency here (see, Matter of Berenhaus v Ward, 70 NY2d 436, 443-444). We have reviewed petitioner's remaining objections and find them equally unpersuasive.

MAHONEY, P. J., WEISS, YESAWICH JR. and MERCURE, JJ., concur.

Adjudged that the determination is confirmed, and petition dismissed, without costs.