■ In the Matter of MARY WILLIAMS, Petitioner, v COUNTY OF FULTON et al., Respondents. [704 NYS2d 349] —Carpinello, J. Proceeding pursuant to CPLR article 78 (transferred to this Court by order of the Supreme Court, entered in Fulton County) to review a determination of respondent County of Fulton which terminated petitioner's employment.

Respondent Fulton County Infirmary (hereinafter the Infirmary) is a nursing home operated by respondent County of Fulton. There are five nursing stations throughout the facility covered by three shifts of nurses, namely, the day, evening and night shifts. Although the tasks assigned to each shift vary in some respects, there are universal procedures for each nursing station. Between April 16, 1990 and October 16, 1995, petitioner, a licensed practical nurse, worked the night shift at the Infirmary. She was reassigned to the day shift in October 1995 following several charges of misconduct relating to her care and treatment of patients.

For over a year and a half (with the exception of a six-month period during which she was on medical leave), petitioner was retrained and closely supervised while working on the day shift. In May 1997, a decision was made that petitioner was ready to be reassigned back to the night shift effective May 29, 1997. Petitioner was against the reassignment and wanted to remain on days. In connection with three acts of misconduct and/or incompetence on June 5, 1997 (i.e., during her first week back on nights), disciplinary charges were filed alleging that petitioner failed to perform a fasting blood sugar test on a diabetic resident, failed to prepare chart renewals on two residents and failed to orally report the condition of the residents assigned to her care to the oncoming day-shift nurse.

Following a hearing, the Hearing Officer issued a report finding petitioner guilty as charged. Following a separate dispositional hearing, the Hearing Officer recommended that petitioner be terminated, a recommendation which was ultimately adopted by the County. Petitioner commenced this CPLR article 78 proceeding to review the determination, which has been transferred to this Court. We now confirm.

Petitioner contends that the findings of guilt against her are not supported by substantial evidence. The testimony of several registered nurses employed at the Infirmary (one of whom was petitioner's night supervisor, one of whom was petitioner's day supervisor and one whom was the Infirmary's director of clinical services) provides the necessary substantial evidence to support the findings of misconduct and incompetency. Through these witnesses, it was established that nurses working the night shift are required to perform fasting blood sugar tests on designated residents. To know which of the residents require the test, a nurse need only consult a document referred to as a "cheat sheet" displayed on a bulletin board at every nurses' station. According to the director of clinical services, the cheat sheet, which contains information about routine procedures

and treatments for various residents, has been in use at the Infirmary since at least 1991. Moreover, according to the night-shift supervisor, the procedures and practices regarding the performance of fasting blood sugar tests by night-shift nurses had been in place for at least six years and thus had not changed during the time period that petitioner had been reassigned to days. On June 5, 1997, petitioner failed to perform this test on a diabetic patient. When the test was finally conducted by the day-shift nurse, the resident's blood sugar level was dangerously low; had this gone undetected and had the resident been given insulin that morning, she could have gone into a diabetic coma.

As to the second charge, it was established through these witnesses that night-shift nurses are required to conduct chart renewals, which entails consulting a monthly calendar to see if any resident is up for renewal that day and, if so, to locate the updated physician's orders for the resident and place same in his or her chart. On June 5, 1997, two patients were indeed up for renewal yet petitioner failed to locate their updated physicians' orders and place them in their charts. As to the final charge, it was established that Infirmary policy mandates that all outgoing shift nurses at every station give a written *and* verbal report to the oncoming nurses about the condition of the residents. On June 5, 1997, petitioner failed to give the required verbal report to the oncoming day-shift nurse.

Significantly, petitioner readily admits that she failed to perform the fasting blood sugar test, conduct the chart renewals and give a verbal report to the oncoming nurse on the subject shift. With respect to the first charge, she testified that notwithstanding her years of experience she was unfamiliar with the cheat sheet and that residents in need of fasting blood sugar tests are listed in red on a daily calendar. Since none was listed on this calendar on June 5, 1997, her explanation continues, she failed to conduct any test. With respect to the second charge, she claimed that no chart renewal paperwork was left on the nurses' desk for the patients in question—which she claims was the customary practice when she last worked nights—and therefore she did not complete the task. With respect to the third charge, she claimed that the oncoming nurse was engaged in conversation with another when she went off duty that day and that, in any event, the particular station to which she was assigned did not require verbal reports between outgoing and oncoming shifts. Petitioner's testimony and explanations for her inactions, however, were found to be incredible by the Hearing Officer, a credibility determination

which we find to be "unassailable" (*Matter of Berenhaus v Ward*, 70 NY2d 436, 443).

Based upon our review of the entire record, we find that substantial evidence supports the determination (*see, e.g., Matter of Gradel v Lilholt*, 257 AD2d 972; *Matter of Burkes v Enlarged City School Dist.*, 257 AD2d 891; *Matter of Stewart v Board of Educ.*, 238 AD2d 838). To the extent that petitioner takes particular issue with the finding of willful and/or intentional conduct on her part, which is required to substantiate the charges of misconduct (*see, e.g., Matter of Benson v Board of Educ.*, 183 AD2d 996, 997, *lv denied* 80 NY2d 756), the Hearing Officer specifically found that petitioner's failure to perform the assigned tasks was indeed intentional and willful given her express desire not to be reassigned to the night shift. We find this inference to be entirely reasonable (*see, Matter of Malloch v Ballston Spa Cent. School Dist.*, 249 AD2d 797, 798, *lv denied* 92 NY2d 810).

We are also unpersuaded by petitioner's contention that the penalty of termination is disproportionate to the offenses committed or shocking to one's sense of fairness. In 1995, petitioner entered into a stipulation of settlement with the County pursuant to which she was disciplined for several charges of misconduct, suspended without pay for two weeks and transferred to the day shift for retraining and supervision. Indeed, this retraining and supervision period had just ended when the subject acts of incompetence and misconduct took place. Having been given ample opportunity to learn the duties required of a licensed practical nurse and having placed at least one resident's health in serious jeopardy, termination was not a disproportionate or shocking penalty (*see, Matter of Pell v Board of Educ.*, 34 NY2d 222).

We have reviewed petitioner's remaining contentions and find them to be totally lacking in merit.

Cardona, P. J., Crew III, Spain and Graffeo, JJ., concur. Adjudged that the determination is confirmed, without costs, and petition dismissed.