(January 7, 2003)

■ In the Matter of Patrick J. Lynch et al., Appellants-Respondents, v Rudolph W. Giuliani, as Mayor of the City of New York, et al., Respondents-Appellants. [755 NYS2d 6] —Judgment, Supreme Court, New York County (Leland DeGrasse, J.), entered October 15, 2001, which declared that section 891 of McKinney's Unconsolidated Laws of New York (L 1940, ch 834, § 1) bars the Office of Administrative Trials and Hearings (OATH) from hearing prosecutions that may result in recommendations for termination against police officers serving in the competitive class of service, and which enjoined OATH from hearing prosecutions which could result in a recommended termination, and denied the petition in all other respects, unanimously modified, on the law, to the extent of declaring that section 891 of McKinney's Unconsolidated Laws prohibits the termination of an officer based upon a hearing conducted by OATH, and to enjoin OATH from holding any hearings resulting from Civilian Complaint Review Board (CCRB or the Board) complaints, and otherwise affirmed, without costs.

The CCRB was formed in 1953 to provide citizens with a venue for registering complaints of police misconduct. It has been a subject of continued controversy since its inception. Presently, the Board has 13 members, all of whom must be residents of the City of New York, must "reflect the diversity of the city's population" and are appointed by the Mayor (NY City Charter, ch 18-A, § 440 [b] [1]).

The New York City Charter authorizes the City Council, the Police Commissioner (the Commissioner) and the Mayor to designate individuals to serve on the CCRB. It provides that: "(i) five members, one from each of the five boroughs, shall be designated by the city council; (ii) three members with experi-

ence as law enforcement professionals shall be designated by the police commissioner; and (iii) the remaining five members shall be selected by the mayor. The mayor shall select one of the members to be chair." (NY City Charter § 440 [b] [1].)

The City Charter confers upon the CCRB the following powers and duties:

"1. The board shall have the power to receive, investigate, hear, make findings and recommend action upon complaints by members of the public against members of the police department that allege misconduct involving excessive use of force, abuse of authority, discourtesy, or use of offensive language, including, but not limited to, slurs relating to race, ethnicity, religion, gender, sexual orientation and disability. The findings and recommendations of the board, and the basis therefor, shall be submitted to the police commissioner. No finding or recommendation shall be based solely upon an unsworn complaint or statement, nor shall prior unsubstantiated, unfounded or withdrawn complaints be the basis for any finding or recommendation.

"2. The board shall promulgate rules of procedure in accordance with the city administrative procedure act, including rules that prescribe the manner in which investigations are to be conducted and recommendations made and the manner by which a member of the public is to be informed of the status of his or her complaint. Such rules may provide for the establishment of panels, which shall consist of not less than three members of the board, which shall be empowered to supervise the investigation of complaints, and to hear, make findings and recommend action on such complaints. No such panel shall consist exclusively of members designated by the council, or designated by the police commissioner, or selected by the mayor.

"3. The board, by majority vote of its members, may compel the attendance of witnesses and require the production of such records and other materials as are necessary for the investigation of complaints submitted pursuant to this section * * *" (NY City Charter § 440 [c]).

NY City Charter § 440 (e) assigns the Police Commissioner absolute authority in matters of police discipline, stating, "The provisions of this section shall not be construed to limit or impair the authority of the police commissioner to discipline members of the department. Nor shall the provisions of this section be construed to limit the rights of members of the department with respect to disciplinary action, including but not limited to the right to notice and a hearing, which may be established by any provision of law or otherwise."

Civilian complaints are presently processed as follows: if the CCRB finds a complaint substantiated, it forwards that determination to one of two branches of the Police Department's internal disciplinary system. These are the Department Advocate's Office (DAO) and the Office of the Special Prosecutor (SPO). Employees of DAO and SPO, who are not necessarily lawyers, are then responsible for determining whether, and how, to prosecute the claims. DAO prosecutes the majority of the disciplinary cases, while SPO handles the more serious allegations of misconduct. Police Department Advocates and Assistant Special Prosecutors (collectively Department Advocates) employed by the Police Department lead prosecution of cases and, where warranted, present them before the department's "Trial Rooms"[1] or OATH.[2] Allegations of corruption are the responsibility of the Police Department's Internal Affairs Bureau (IAB), and police misconduct involving criminal acts is generally investigated and prosecuted by the District Attorney in the county where the crime took place.

In 1995, the Mayor executed an order establishing the New York City Commission to Combat Police Corruption (Corruption Commission) to "evaluate, on a permanent basis, the effectiveness of Department policies and procedures to combat any conditions and attitudes that 'tolerate, nurture or perpetuate corruption'" (Executive Order No. 15 [Feb. 27, 1995] "Establishment of Commission to Combat Police Corruption" at 4, quoted in July 2000 Commission to Combat Police Corruption Report, "The New York City Police Department's Prosecution of Disciplinary Cases" [hereinafter, Commission Report] at 1). The Corruption Commission conducted a study of the existing system for prosecuting disciplinary actions, collecting statistics from November 1998 through October 1999. It analyzed the effectiveness of the processing of both civilian-initiated and non-civilian-initiated complaints.

In its report, the Commission found an inordinate delay in the prosecution of civilian-initiated disciplinary cases, and it attributed substantial lapses to the transfer of information between the CCRB and the Police Department. The Commission

---

1. At the Police Department's Office of the Deputy Commissioner-Trials (DCT), disciplinary cases are adjudicated in the trial rooms. The Office of the DCT is comprised of the Deputy Commissioner and three Assistant Deputy Commissioners. The four sit as judges in Department disciplinary cases, presiding over negotiations, hearings and trials, and rendering decisions making penalty recommendations to the Police Commissioner.

2. OATH is a City Charter agency authorized to conduct adjudicatory hearings for all City agencies. It presently adjudicates some NYPD disciplinary cases.

also concluded that staffing and training improvements are needed within the DAO (Commission Report at 92). One of a number of recommendations by the Commission was that the CCRB be allowed to follow up with the prosecution of certain civilian-initiated complaints. Specifically, the Commission wrote: "While ultimate responsibility for disciplinary decisions needs to remain with the Police Commissioner, including the right to accept or reject plea agreements, the prosecution of CCRB cases should be handled in-house by CCRB. Such a system would provide an incentive to CCRB to substantiate only cases that can be successfully prosecuted and prevent the Department and CCRB from being able to blame each other for the failure of CCRB prosecutions. Increasing accountability for these cases and eliminating the reciprocal finger pointing which often takes place currently should also enhance public confidence in how these complaints are being addressed. Additionally, having one agency both investigate and prosecute these cases should produce some corresponding reduction in the time it takes for these cases to be completed. Pursuant to this proposal, the Commissioner would retain the existing statutory power to approve or disapprove all trial results." (Commission Report at 93.)

The Memorandum of Understanding

In January 2001, based upon the Commission's recommendations, the Mayor and the Police Commissioner announced a plan to make amendments to the City's rules. These proposed rule changes were intended to facilitate the prosecution by the CCRB of all the cases which arose from substantiated civilian complaints. In April 2001, the Police Department and the CCRB entered into a memorandum of understanding (MOU) which permitted the CCRB to prosecute all complaints substantiated on or after July 25, 2001.[3] The MOU also stated, "All substantiated civilian complaints prosecuted by CCRB in accordance with this Memorandum of Understanding (MOU) in which Charges and Specifications are preferred against NYPD uniformed officers and for which a hearing is required shall be heard by the New York City Office of Administrative Trials and Hearings (OATH)." The proposed administrative rule changes were published in the City Record for public comment, and the final changes became effective on May 23, 2001.

---

3. The parties have stipulated to stay implementation pending resolution of the proceeding. As the system currently exists, when a CCRB investigation is completed, the Board determines which allegations, if any, to substantiate. The substantiated charges are then forwarded to the DAO or SPO for prosecution.

The MOU and its implementing rules directed the CCRB to establish a unit of attorneys and staff to conduct the prosecutions formerly forwarded to either the DAO or SPO. The CCRB attorneys were given the authority to file formal charges, which necessitated an administrative hearing, or to recommend lower level disciplinary action for less serious offenses (*see* 38 RCNY 1E-12). As outlined in the MOU, under the proposed rule changes, CCRB attorneys would have the authority to negotiate plea agreements with police officers and their attorneys, subject to the Commissioner's final approval, or to recommend that a case be dismissed or not be prosecuted. CCRB attorneys would also be entitled to receive a summary of the employment history of the subject of a substantiated complaint, and, under specified circumstances, limited information could be obtained concerning police officer witnesses (38 RCNY 15-15).

Finally, 38 RCNY 15-12 provided that, "Where [CCRB] prosecutions include the filing of Charges and Specifications against the subject officer, an Administrative Law Judge of the Office of Administrative Trials and Hearings (OATH) shall conduct any hearing necessary to the prosecution of the case and issue a report containing proposed findings of fact and a recommended decision to the Police Commissioner."

The Judgment Appealed

Petitioners are heads of the various unions representing uniformed police officers, sergeants, lieutenants, captains and detectives. They commenced this proceeding, alleging that the MOU and the rule changes in question violated City Charter § 11, Administrative Code of the City of New York (Administrative Code) § 14-115 (b), Municipal Home Rule Law § 23 (2) (f), Civil Service Law § 75, McKinney's Unconsolidated Laws of New York § 891, and Civil Rights Law § 50-a. Respondents are the Mayor, the Police Commissioner, the Chair of the CCRB, the Executive Director of the CCRB, the Chief Administrative Judge of OATH, and OATH itself. They defended the MOU and the new rules as within the Commissioner's broad discretion to control police discipline.

The IAS court determined that the MOU and the attendant rule changes were lawful, except that state law bars the termination of an officer based upon a hearing conducted by a nonemployee of the Police Department. In response to petitioners' challenge to CCRB's authority to prosecute cases under Administrative Code § 14-115 (b), the IAS court determined that "read in harmony with the Charter, it allows the Commissioner to 'deputize' CCRB members to prosecute administrative hearings against police officers." Rejecting petitioners'

challenge based upon Civil Service Law § 75, which governs the disciplinary procedures to be applied for detectives of a certain seniority, the court also concluded that OATH could also be "deputized" under the language of that statute, to hear those administrative proceedings. However, the court agreed with petitioners that allowing OATH the authority to conduct hearings which may result in an officer's termination violated McKinney's Unconsolidated Laws § 891.

The IAS court concluded that the modifying language of McKinney's Unconsolidated Laws § 891, which differs from Administrative Code § 14-115 (d) and Civil Service Law § 75 in that it refers to a "deputy *or other employee*" (emphasis added), precludes OATH Administrative Law Judges, who are not Police Department employees, from presiding over any disciplinary hearings which may result in a recommended termination.

Discussion

Petitioners appeal; respondents cross appeal from that portion of the judgment granting the petition to the extent of "(i) declaring that § 891 of McKinney's Unconsolidated Laws prohibits respondent Office of Administrative Trials and Hearings hearing prosecutions that may result in recommendations for termination against police officers serving in the competitive class of service and (ii) barring said respondent from hearing such cases."

We agree that allowing OATH to conduct disciplinary hearings violates McKinney's Unconsolidated Laws § 891, and therefore invalidate that portion of the MOU and rule changes which call for OATH to conduct all hearings resulting from complaints filed with the CCRB. However, we uphold that aspect of the MOU and the amendments to the Rules of the City of New York which grant the CCRB the revocable authority to administratively prosecute police officers for certain enumerated offenses. This aspect of the proposed changes falls within the broad discretion granted to the Police Commissioner to structure the disciplinary process under NY City Charter § 434.

As the Court of Appeals has recognized, "[a]s chief executive officer of the police force, the New York City Police Commissioner is vested with 'cognizance and control' over the discipline of uniformed officers (NY City Charter § 434 [a])" (*Matter of Montella v Bratton*, 93 NY2d 424, 429). The Administrative Code outlines the procedures to be followed to punish infractions, providing, for example, that a police officer can only be disciplined "on written charges * * * after such charges have been examined, heard and investigated by the commissioner or

one of his or her deputies upon such reasonable notice to the member or members charged" (Administrative Code § 14-115 [b]). Emphasizing that the Police Commissioner has broad power to allocate punishment within the department, the Court of Appeals stated in *Montella*, "[t]hese provisions in the Charter and Code make clear that the Legislature determined to 'leave the disciplining of police officers, including the right to determine guilt or innocence of breach of disciplinary rules and the penalty to be imposed upon conviction, to the discretion of the Police Commissioner, subject, of course, to review by the courts pursuant to CPLR article 78' (*Matter of City of New York v MacDonald*, 201 AD2d 258, 259, *lv denied* 83 NY2d 759)" (*Matter of Montella, supra* at 430).

As applied here, we find no reason to preclude the Police Commissioner from delegating the responsibility for prosecuting substantiated civilian complaints to the CCRB. However, we find that portion of the MOU and 38 RCNY 15-12 which provides that OATH should conduct all hearings resulting from CCRB prosecutions violates McKinney's Unconsolidated Laws § 891.

NY City Charter § 434 (a) allows the Police Commissioner to expand CCRB's role in the disciplinary process upon its determination that doing so will enhance the quality of civilian initiated complaints by allowing the prosecutor to have closer contact with the investigator, allowing for conferences throughout the prosecution, as is done in the Police Department. Allowing CCRB to prosecute cases is also consistent with the settled principle that the Legislature is free to announce its policy in general terms and authorize administrators to "fill in details and interstices and to make subsidiary policy choices consistent with the enabling legislation" (*Matter of Citizens For An Orderly Energy Policy v Cuomo*, 78 NY2d 398, 410).

In *Matter of Silverman v McGuire* (51 NY2d 228), the Court of Appeals held that certain disciplinary plea agreements entered into by the trial commissioner were not binding upon the Commissioner "absent express prior delegation of that authority by the commissioner or subsequent express approval of the particular bargain made in an individual case" (*id.* at 232). The Court reasoned, "Given the sensitive nature of the work of the police department and the importance of maintaining both discipline and morale within the city's 'chosen mode of organization for its police force' (*Kelley v Johnson*, 425 US 238, 247), we believe that there are, indeed, policy impediments precluding enforcement of plea arrangements negotiated by a trial commissioner * * *" (*id.* at 231-232).

Here, under the rationale of *Silverman*, expanding the role of the CCRB to prosecute civilian-initiated complaints would not improperly expand the sphere of the Board's influence, because the administrative hearings which may result from CCRB prosecutions will be conducted by the Police Department's Office of the Deputy Commissioner-Trials in the trial rooms. In addition, the recommendations of DCT are subject to the Commissioner's retained power and may be modified, remanded or revoked at his or her discretion. Moreover, the Commissioner also retains authority to revoke the MOU itself at any time. The proposed rule changes do not contemplate granting CCRB any new substantive rights, nor have they diminished the Police Commissioner's authority to make the final determination as to appropriate disciplinary sanctions.

Streamlining the procedure for prosecuting certain civilian-initiated cases does not, contrary to petitioners' contention, violate NY City Charter § 11 (f). This provision applies to reorganization of agencies under the jurisdiction of the Mayor. It gives the Mayor power to transfer functions from one agency to another; but limits that power so that it "shall not apply * * * to any board or commission established pursuant to a provision of this charter." A review of the rule changes at issue shows that they do not contemplate a reorganization of the CCRB which would implicate the limitations of section 11 (f). Thus, we agree with the IAS court's conclusion that the MOU did not violate section 11 (f), but merely provided for the adoption of rules consistent with the CCRB's already existing delegated powers.

We also reject petitioner's argument that the doctrine of legislative equivalency, which requires that a legislative act only be abolished by a correlative legislative act (*see Weitzenberg v Nassau County Dept. of Recreation & Parks*, 249 AD2d 538), has been violated. Nor is there a violation of the doctrine of separation of powers. There is no showing that the Mayor has infringed upon an area within the exclusive province of the City Council. Here, petitioners contend that the Mayor and the Police Commissioner cannot expand the powers granted to the CCRB through an MOU because a City Council vote is needed for a reorganization of any agency under the jurisdiction of the Mayor, pursuant to NY City Charter § 11. However, the MOU, to the extent upheld, is an attempt to reallocate the division of duties within established organizations, a change which does not require amendment of the City Charter. The authority to make the authorized changes falls squarely within the Police Commissioner's broad discretion to structure police disciplinary processes.

In support of their position, petitioners point to a statement in the Commission Report opining that an amendment to the City Charter would be required to make all of the changes contemplated by the MOU (*see* Commission Report at 93). That statement by the Corruption Commission is merely an advisory opinion and unsupported by any legal authority. That portion of the MOU which allows the Police Commissioner to provide an expanded role for the CCRB effects a procedural change which falls within the parameters of his or her discretion under NY City Charter § 434 (a) and no amendment is required. The Commissioner's powers over police discipline arise out of the fact that it is he or she "and not the courts, [who] is accountable to the public for the integrity of the Department" (*Matter of Berenhaus v Ward*, 70 NY2d 436, 445; *see also Matter of Montella, supra* at 430).

We further note that the IAS correctly upheld 38 RCNY 15-15. This rule gives CCRB the authority to obtain the personnel records of police officers who are under investigation. The information made available includes the officer's last three evaluations, summary data about arrests made, assignments, awards, disciplinary history, and an assessment of the officer by his commanding officer. 38 RCNY 15-15 also, upon a showing of a "particularized need," pursuant to Civil Rights Law § 50-a (4), affords access to the personnel files of those who may be witnesses in proceedings to "any agency of government which requires the records * * * in the furtherance of their official functions" (Civil Rights Law § 50-a [4]; *see Matter of Green v Safir*, 255 AD2d 107, *lv denied and dismissed* 93 NY2d 882).

For all of the foregoing reasons, we agree with the IAS court that the Commissioner's delegation of the prosecutorial function to the CCRB was a proper exercise of discretion in the management of the Police Department. We also agree with the IAS court that McKinney's Unconsolidated Laws § 891 requires that a police officer be removed from his or her position only after a hearing conducted by an individual actually employed by the Commissioner. In providing that removal hearings "shall be held by the officer or body having the power to remove the person charged * * * or by *a deputy or other employee* of such officer or body * * *" (emphasis added), McKinney's Unconsolidated Laws § 891 plainly limits the Commissioner's power to delegate the task of presiding over such hearings to employees of his own department.[4] McKinney's Unconsolidated Laws § 891, by its terms, applies only to charges that may result in

---

4. We reject, however, petitioners' argument that McKinney's Unconsolidated Laws § 891 similarly limits the Commissioner's power to delegate the

an officer's removal from service, and Administrative Code § 14-115 (b), which governs all disciplinary hearings in the New York City Police Department, provides that such hearings shall be conducted "by the commissioner or one of his or her deputies," without the modifying clause "or other employee." Nonetheless, because the two statutes relate to the same subject matter (McKinney's Cons Laws of NY, Book 1, Statutes § 221 [a]), they should be "construed together as though forming part of the same statute" (McKinney's Cons Laws of NY, Book 1, Statutes § 221 [b]). Accordingly, we modify the judgment to enjoin OATH from holding any hearings based on complaints filed with the CCRB, whether or not termination is a possible outcome of the hearing. Concur—Nardelli, J.P., Mazzarelli, Andrias, Rosenberger and Friedman, JJ.

prosecutorial function. McKinney's Unconsolidated Laws § 891 simply does not address by whom police disciplinary charges may be prosecuted, and therefore does not stand in the way of the Commissioner's delegation of that task to the CCRB.