Matter of Min Wu v Institute of Elec. & Elecs. Engrs., Inc. (2025 NY Slip Op 07347)

Matter of Min Wu v Institute of Elec. & Elecs. Engrs., Inc.

2025 NY Slip Op 07347

Decided on December 30, 2025

Appellate Division, First Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: December 30, 2025

Before: Moulton, J.P., Scarpulla, Rosado, O'Neill Levy, Chan, JJ. 

Index No. 159073/24|Appeal No. 5480|Case No. 2025-02138|

[*1]In the Matter of Min Wu, Ph. D., Petitioner-Appellant,
vThe Institute of Electrical and Electronics Engineers, Inc., Respondent-Respondent.

Sher Tremonte, LLP, New York (Justin J. Gunnell of counsel), and Miller, Canfield, Paddock and Stone, PLC, New York (Matthew P. Allen of counsel), for appellant.
Dorsey & Whitney, LLP, New York (Bruce R. Ewing of counsel), for respondent.

Judgment (denominated an order), Supreme Court, New York County (Alexander M. Tisch, J.), entered on or about March 24, 2025, which denied the petition to annul the May 1, 2024 and July 3, 2024 determinations of respondent finding cause to remove petitioner as President of the Signal Processing Society (SPS), a unit within respondent's organization, and barring her from leadership positions through December 2027, and to reinstate petitioner to her full term as President of SPS, and dismissed this proceeding brought pursuant to CPLR article 78, unanimously affirmed, without costs.
Respondent's determination was properly upheld because it did not exceed the authority delineated in its governing documents (CPLR 7803 [2]), nor did it act in violation of its own procedures or in a manner that was arbitrary and capricious (CPLR 7803[3]). The provisions in the bylaws governing the removal of officers and directors are not the exclusive avenues to impose discipline against petitioner. "The by-laws of the corporation constitute a contract between the [members] and the corporation" (ALH Props. Ten v 306-100th St. Owners Corp., 191 AD2d 1, 16 [1st Dept 1993], affd as modified 86 NY2d 643 [1995]). A member such as petitioner "'impliedly agrees' that the [b]ylaws 'shall be determinative of his/her rights and status' in relation to the corporation and its members" (James v National Arts Club, 33 Misc 3d 1211[A], 2011 NY Slip Op 51885[U], *8 [Sup Ct, NY County 2011] [internal quotation marks omitted]).
Respondent properly applied its bylaws, which, in addition to the procedures urged by petitioner as those which should have been applied, provide for separate and distinct procedures to address misconduct by members, including violations of its code of ethics, by authorizing its Ethics and Member Conduct Committee (EMCC), to determine whether petitioner had engaged in misconduct and to either recommend sanctions, as defined in the bylaws, or to determine other disciplinary actions against petitioner. Specifically, respondent implemented the provisions of its Policy 7.10, which sets the procedures for the EMCC and its Conduct Review Committee (CRC) to follow and which further defines the "other disciplinary actions" that may be taken, including removal and a ban from leadership positions for a specific time or permanently.
The record demonstrates that respondent followed these procedures, upon the complaints of other members, by interviewing petitioner and others, seeking her written responses to questions, and providing her with a mechanism to appeal the CRC's initial finding. The involvement of respondent's Board of Directors, which ultimately reduced the length of time petitioner would be banned from leadership positions, was authorized by the bylaws provision allowing the Board to intervene in matters the Board finds to be of "immediate importance." Petitioner's contention that a hearing was required is meritless and, in any event, her removal was not a "sanction" that would trigger a hearing as defined in the bylaws.
The CRC's and the EMCC's findings that petitioner violated the code of ethics were not arbitrary and capricious, as it was not irrational to conclude that petitioner's statements were harmful to another member's reputation (see Matter of Pell v Board of Educ. of Union Free School Dist. No. 1 of Scarsdale & Mamaroneck, Westchester County, 34 NY2d 222, 231 [1974]). The affidavits submitted by respondent were properly accepted and further explained the rationale for these decisions (see Matter of Robins v New York City Off. of Chief Med. Examiner, 212 AD3d 541, 542 [1st Dept 2023], lv denied 39 NY3d 914 [2023]). Petitioner's characterization of her statements is not the only rational interpretation of the evidence (see Matter of Berenhaus v Ward, 70 NY2d 436, 444 [1987]).
Nor was the decision of the ad hoc committee formed by the SPS, under separate bylaws addressing conflict resolution, controlling. The SPS bylaws state that any party dissatisfied with the outcome of an ad hoc committee decision may escalate the matter to respondent, which is what happened here.
The penalty was not so disproportionate as to be shocking to one's sense of fairness (see Matter of Perez v Rhea, 20 NY3d 399, 405 [2013]).
We have considered petitioner's remaining contentions and find them unavailing.
THIS CONSTITUTES THE DECISION AND ORDER OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: December 30, 2025