OPINION OF THE COURT
Chief Judge Wachtler.
Petitioners in these article 78 proceedings, both members of the New York City Police Department, were dismissed from the force following separate departmental disciplinary hearings. In each case, the findings of misconduct rested on the testimony of Thomas Peteroy, a fellow police officer who, all involved agree, was a "rogue cop” with a sordid history of thievery and extortion, and who claimed to have been an accomplice in the corrupt acts which led to the charges against the petitioners.
In separate opinions, the Appellate Division granted the petitions challenging the determinations, finding that the *440 determinations of guilt were not supported by substantial evidence because Peteroy’s testimony was uncorroborated (Matter of Farry v Ward, 126 AD2d 7; Matter of Berenhaus v Ward, 118 AD2d 196). We granted leave in both cases (Matter of Farry v Ward, 69 NY2d 612; Matter of Berenhaus v Ward, 69 NY2d 603) to consider the extent to which the rule requiring corroboration of accomplice testimony in criminal proceedings (see, CPL 60.22) applies in administrative hearings — specifically police disciplinary matters — involving charges of misconduct of a criminal nature. We conclude that corroboration is not required in such proceedings, and accordingly, the judgments of the Appellate Division should be reversed and the petitions dismissed.
It is unnecessary to repeat the detailed recital of the facts contained in the opinions below. It is sufficient to note that Officer Berenhaus was accused by Officer Peteroy of having solicited and accepted from Peteroy a quantity of marihuana from a large inventory of the substance that had been seized as evidence. Peteroy’s testimony, if true, established that, as charged, Officer Berenhaus had appropriated evidence for his own use and possessed a quantity of a controlled substance. Officer Berenhaus denied the charges and sought to establish that he and Peteroy were not on good terms, having argued and exchanged insults several times during the 10 years that they both worked at the 10th Precinct. During his more than 15 years on the force, Berenhaus had earned an unblemished disciplinary record and numerous awards and commendations.
Sergeant Farry was accused by Peteroy of having stolen auto parts during an investigation of a burglary at an automobile dealership. Peteroy testified that he also participated in the theft and later arranged for Farry to sell the stolen items. If true, Peteroy’s testimony established that, as charged, Sergeant Farry possessed stolen property and, being aware that other police officers removed property from the burglary scene, failed to take proper police action. Sergeant Farry acknowledged his participation in the burglary investigation but denied that he had stolen any property. At the time of the hearing, Sergeant Farry had served on the force for approximately 15 years with only one minor mark on his disciplinary record and, like Berenhaus, had earned several awards and commendations.
Officer Peteroy demonstrated by his own admissions at the hearings that he was an unsavory character who capitalized *441 on every opportunity to benefit himself through corruption. The litany of misdeeds he acknowledged included the practice of taking protection money from after-hours clubs in the precinct, which resulted, in 1982, in his indictment for violations of the Hobbs Act (see, 18 USC § 1951). Peteroy agreed to cooperate with the Federal authorities in exchange for the opportunity to plead to a lesser offense. Despite his eventual guilty plea to a Federal felony charge, he was retained on the police force on "modified assignment” in the Internal Affairs Division, where he acted as an informant. His accusations against Officer Berenhaus came to light as Berenhaus was about to testify on behalf of another police officer who was being prosecuted by the United States Attorney. The prosecutor asked Peteroy for information about Berenhaus that could be used to impeach his testimony, and Peteroy obliged by telling the prosecutor about the alleged marihuana transaction. Although Berenhaus denied the charges when questioned by the prosecutor, the departmental charges now under review were subsequently filed and tried.
Peteroy’s accusations against Sergeant Farry were first made to a detective in the Internal Affairs Division when Peteroy was asked by the detective whether he had any knowledge of misconduct by officers in the 10th Precinct. Peteroy’s story prompted the charges filed against Farry.
After separate hearings, at which Peteroy was the chief departmental witness, the Assistant Commissioner of Trials (ACT) recommended that both officers be found guilty as charged and dismissed from the Department. In both cases he concluded that the determination of guilt depended squarely on whether Peteroy or the accused officers had told the truth at the hearings. While acknowledging that "Peteroy can only be characterized as a 'rogue cop’, who long ago gave up any intention to honor his duty to enforce the law”, the ACT nevertheless found Peteroy’s testimony credible. In making this assessment, the ACT considered Peteroy’s demeanor, whether his cooperation with Federal authorities may have motivated him to fabricate the charges, his history of corruption, and whether he may have been motivated by animosity toward the officers he accused. In addition, in the case of Farry, he found that Peteroy’s testimony was corroborated by evidence that the items described by Peteroy were, in fact, missing from the car dealership and evidence that a burglar alarm had been tripped in the parts department at the time *442 the officers were allegedly in that part of the car dealership premises.
With respect tó the penalty to be imposed, the ACT noted the exemplary service records of both officers, but recommended dismissal because of the serious nature of the misconduct proved.
The Police Commissioner approved the ACT’s findings and recommendations and dismissed both Berenhaus and Farry. The officers then commenced these separate article 78 proceedings seeking to annul the Commissioner’s determinations on the grounds that the findings of guilt were not supported by substantial evidence (see, CPLR 7803 [4]) or, in the alternative, that the penalties imposed were excessive (see, CPLR 7803 [3]). Upon transfer from Supreme Court (CPLR 7804 [g]), the Appellate Division granted both petitions and annulled the determinations. The court found no basis in either case for the ACT’s decision to credit Peteroy’s testimony and held that, in cases such as these, involving charges of criminal conduct leveled by an accomplice with a past as riddled with dishonesty as Peteroy’s, there must be corroboration of the accomplice’s testimony, along the lines of that required by CPL 60.22.[1] Finding no such corroboration and disagreeing with the ACT’s assessment of the factors informing his credibility determinations, the court held that the Commissioner’s determinations were not supported by substantial evidence. In addition, in the Berenhaus case, the court opined that, even if the charges had been substantiated, the penalty of dismissal was excessive in light of Officer Berenhaus’s fine record.
We begin our analysis by accepting, for purposes of the discussion, that Peteroy was an accomplice as that term is defined in CPL 60.22 and that his testimony was not corroborated in either case.[2] In addition, we agree with the Appellate Division that Peteroy’s testimony presented the kinds of dangers that the accomplice corroboration rule recognizes and seeks to avoid. The rationale underlying the rule is that *443 "accomplices may themselves be persons of disrepute, lacking the normal indicia of reliability” and, having participated in the criminal conduct, "may have purchased a reduced exposure to criminal liability by promising to implicate others” (People v Daniels, 37 NY2d 624, 629; see, People v Hudson, 51 NY2d 233, 238). Officer Peteroy’s history and his cooperation with Federal authorities and with the Internal Affairs Division fully implicated these concerns in both cases.
It is evident, however, that CPL 60.22 is limited in its application to criminal prosecutions and does not by its terms apply to police disciplinary hearings. The question posed by these appeals is whether, in these circumstances, given the recognized dangers of accomplice testimony, corroboration is nevertheless required in order for the determinations to be supported by "substantial evidence.”
Substantial evidence has been defined as " 'such relevant proof as a reasonable mind may accept as adequate to support a conclusion or ultimate fact’ ” (People ex rel. Vega v Smith, 66 NY2d 130, 139, quoting 300 Gramatan Ave. Assocs. v State Div. of Human Rights, 45 NY2d 176, 180). Here, the testimony of Officer Peteroy, if true, established all of the facts necessary to sustain the charges against Berenhaus and Farry. In both of these cases, the Hearing Officer, after a full consideration of many factors, including Peteroy’s character and possible self-interest, decided to credit his testimony and reject that of the petitioners. In our view, those credibility determinations are unassailable and the testimony thus credited provided substantial evidence for the determinations under review.
It is basic that the decision by an Administrative Hearing Officer to credit the testimony of a given witness is largely unreviewable by the courts, who are disadvantaged in such matters because their review is confined to a lifeless record. The Hearing Officer before whom the witnesses appeared, on the other hand, was able to perceive the inflections, the pauses, the glances and gestures — all the nuances of speech and manner that combine to form an impression of either candor or deception. For this reason, and because of statutory and, in our case, constitutional constraints on the courts’ fact-finding powers (see, Matter of Pell v Board of Educ., 34 NY2d 222, 230), "[w]here there is a conflict in the testimony produced * * * where reasonable men might differ as to whether the testimony of one witness should be accepted or the testi *444 mony of another be rejected, where from the evidence either of two conflicting inferences may be drawn, the duty of weighing the evidence and making the choice rests solely upon the [administrative agency]. The courts may not weigh the evidence or reject the choice made by [such agency] where the evidence is conflicting and room for choice exists” (Matter of Stork Rest. v Boland, 282 NY 256, 267, quoted in Matter of Collins v Codd, 38 NY2d 269, 270-271).
The concerns underlying the corroboration requirement— the possibility of self-interested or gratuitous fabrication — are, quite plainly, concerns about credibility. These concerns are relevant in the administrative tribunal and should be taken into account by the fact finder, as should any other factor that casts doubt on the veracity of a witness. But we find no reason to import from the rules of evidence governing criminal proceedings the additional requirement that accomplice testimony be corroborated.
If the Hearing Officer has recognized the dangers and nevertheless found the accomplice’s testimony worthy of belief, then the concerns which gave rise to the corroboration rule should abate. A demand for more can only reflect an unwarranted distrust of the Hearing Officer’s ability to assess the relevant factors and would breach the statutory constraints imposed upon our review of administrative determinations (see, CPLR 7803).
Matter of Evans v Monaghan (306 NY 312), a case cited by the Appellate Division, supports our conclusion, despite the effort made in that case to find evidence lending credence to the accomplice’s testimony. In upholding the determination of the Police Commissioner in Evans, we stated that section 399 of the Code of Criminal Procedure (the predecessor to CPL 60.22) did not apply to police disciplinary hearings (id., at 319). Although we also noted that the considerations upon which the rule is based should not be ignored in such hearings, it is significant that our conclusion that the accomplice’s testimony was worthy of belief rested largely, not on the presence of independent corroborative evidence, but rather on the detailed nature of the accomplice’s own testimony (id., at 320-321). We acknowledged that such evidence "may not amount to corroborative evidence * * * to the extent required by section 399” (id., at 319) but found it sufficient nonetheless. Evans is therefore consistent with our position that, although accomplice testimony should be examined with the purposes of the corroboration requirement in mind, a Hearing Officer’s *445 decision to credit such testimony need not be coupled with corroborative evidence.
Matter of Kelly v Murphy (20 NY2d 205), on which the Appellate Division placed heavy reliance, suggests that the absence of corroboration may require that the accomplice’s testimony be discounted. But that suggestion must be understood in light of the facts of that case. We emphasized in Kelly that the Commissioner’s determination of guilt was made despite the fact that the Hearing Officer had exonerated Officer Kelly, and noted, in accord with our holding today, that the Hearing Officer’s evaluation of the witnesses’ credibility was entitled to great weight (id., at 209-210). Although we observed that, in contrast to Evans, no "corroborating circumstances” were present (id., at 208), that observation was not the sole or controlling basis for our conclusion that the Commissioner’s determination was not supported by substantial evidence. It was simply one reason among several why we found the Commissioner’s decision to overrule the Hearing Officer to be unsupportable. Thus, Kelly cannot be read to establish a corroboration requirement and its analysis has no application to cases, such as these, where the Hearing Officer has credited the accomplice testimony.
Because, for the reasons stated, we find no reason to require corroboration of accomplice testimony in police disciplinary hearings, we conclude that the Commissioner’s determinations are supported by substantial evidence. We also conclude that the punishments imposed were not excessive. In matters of police discipline, we must accord great leeway to the Commissioner’s determinations concerning appropriate punishment, because he, and not the courts, is accountable to the public for the integrity of the Department (Matter of Pell v Board of Educ., 34 NY2d 222, 235, 237, supra; see, Matter of Alfieri v Murphy, 38 NY2d 976). The charges sustained here were serious, involving criminal conduct by those entrusted to enforce the law. Under these circumstances we cannot say that dismissal was unwarranted.
Accordingly, the judgments of the Appellate Division should be reversed and the petitions dismissed.
Judges Simons, Kaye, Alexander, Titone, Hancock, Jr., and Bellacosa concur.
In each case: Judgment reversed, with costs, and the petition dismissed.

. CPL 60.22 (1) provides, in relevant part: "A defendant may not be convicted of any offense upon the testimony of an accomplice unsupported by corroborative evidence tending to connect the defendant with the commission of such offense.”

. In light of our holding that corroboration is not required, we do not address the arguments that Peteroy’s testimony was sufficiently corroborated in both cases and do not undertake to resolve the dispute on that point between the majority and the dissenter at the Appellate Division in Farry.