(November 21, 2000)

■ 49TH STREET MANAGEMENT CO., INC., et al., Petitioners, v NEW YORK CITY TAXI AND LIMOUSINE COMMISSION, Respon-

dent. [716 NYS2d 391] —Determination of respondent New York City Taxi and Limousine Commission, dated November 8, 1999, revoking the taxicab agent's license held by petitioners and directing petitioner Nicolas Stanitsas to divest himself of all ownership interest in four taxi medallions, unanimously confirmed, the petition denied and the proceeding brought pursuant to CPLR article 78 (transferred to this Court by order of the Supreme Court, New York County [Leland DeGrasse, J.], entered May 11, 2000), dismissed, without costs and disbursements.

Petitioner 49th Street Management Co., Inc., has, since 1994, been operating as a taxicab agent, an entity which operates taxicabs on behalf of various owners (see, Administrative Code of City of NY § 19-502). In 1997, 49th Street was licensed by respondent New York City Taxi and Limousine Commission (TLC) as a taxicab agent. Petitioner Stanitsas is a principal of 49th Street and, in addition, a 50% shareholder of two other corporations, Langham Taxi Corp. and Banana Taxi Corp., each of which owns two taxicab medallions. These are the four medallions that are involved in this proceeding. After an investigation in 1991 yielded evidence that TLC inspectors were accepting bribes in exchange for passing taxicabs upon inspection and certain inspectors were arrested, the TLC held hearings to determine the fitness of the various corporations and individuals allegedly involved in the corruption to hold medallions and licenses. One of those proceedings—a 1995 medallion revocation proceeding—involved Stanitsas, George Statharos, who employed Stanitsas as his assistant manager, and the corporations with which they were involved. Stanitsas had originally been named as a respondent in that proceeding, but it was dismissed as against him after a determination was made that he was no longer licensed by the TLC in any capacity. The Administrative Law Judge in that proceeding (hereinafter the first ALJ), concluded that Stanitsas had participated in bribing inspectors to pass medallions owned by certain of the corporate respondents and, based on that finding, held those corporations liable for his misconduct.

In September 1997, upon learning that Stanitsas held interests in medallions, the TLC again commenced proceedings against him, this time resulting in the revocation of his license to own taxicabs. Stanitsas commenced an article 78 proceeding to challenge the determination, but the TLC withdrew the determination because some of the tapes from the hearing had been lost.

Thereafter, by letter dated February 19, 1999, Stanitsas was

directed to appear at a hearing "to determine [his] fitness to retain shares in [Langham] and [Banana] and be licensed as a taxicab agent in light of findings that [he] paid bribes to TLC personnel in 1991 and 1992."

Joseph Garcia, a New York City Police Department detective assigned to investigate the bribery of the TLC inspectors, was the TLC's sole witness at the fitness hearing, which commenced on March 18, 1999. Garcia testified that he was told by Joseph Tromboli, a TLC inspector stationed at the Woodside, Queens, inspection facility, and, in addition, a confidential operative in the corruption investigation, that on September 17, 1991, an Inspector Muller told Tromboli that Stanitsas brought in a vehicle for inspection and told Muller that "he could pick up the money at the garage." Tromboli and Muller visited the garage, where they were each given $75 in cash. Garcia, who was part of a surveillance team positioned within view of the garage, observed Tromboli and Muller enter and then emerge from the garage a few minutes later and subsequently received from Tromboli the $75 he had been given.

Garcia also testified about a second incident, which took place on October 18, 1991. On that date, as told to him by Tromboli, Stanitsas brought three vehicles to the Woodside inspection facility. Two of the vehicles failed inspection; one was retested and passed after a brake computer was recalibrated. Later in the day, according to Tromboli, Stanitsas returned with the third vehicle, which passed after reinspection. After being told by Stanitsas that "the money would be inside the car," Tromboli removed $225 from one of the vehicles. This sum, which was "divided among the inspectors that were working that lane," represented $75 for each of the vehicles that Stanitsas brought in that day. Tromboli turned his share—$100—over to Garcia. Stanitsas testified at the hearing in his own behalf. He stated, *inter alia*, that he had never had any dealings with Tromboli and that he had never "offered a bribe or gratuity to any commission inspector, or personnel of importance."

In a Recommendation to Chairperson dated November 4, 1999, the Administrative Law Judge who presided over the hearing (the second ALJ) recommended the revocation of Stanitsas's license: "In light of the findings at the extensive OATH hearing* and Detective Garcia's persuasive testimony, Mr. Stanitsas' claims were not at all credible." In a letter from the TLC Commissioner/Chairperson dated November 8, 1999,

---

* This is a reference to the proceeding that was heard by the first ALJ, from which Stanitsas had been dismissed and which resulted in a finding

Stanitsas was advised that his taxicab agent license was revoked and that he was required to divest himself of all ownership interest in the medallions at issue.

Petitioners initially argue that the determination was improperly based on findings made in a separate proceeding and, accordingly, must be annulled. "Where a hearing has been held, it is improper for an administrative agency to base a decision upon information outside the record because such a procedure denies the parties an opportunity to refute the outside information." (*Matter of Multari v Town of Stony Point*, 99 AD2d 838, citing *Matter of Simpson v Wolansky*, 38 NY2d 391, 396.) Here, the ALJ violated that principle, since her determination that "Mr. Stanitsas' claims were not at all credible" was based, in part, on "the findings at the extensive OATH hearing [before ALJ Lewis] and Detective Garcia's persuasive testimony." In addition, reliance on the findings at the prior administrative hearing runs counter to the rule that a prior determination of an issue may not be used against someone who was not a party to the prior proceeding and did not have a full and fair opportunity to litigate the issue. (*See, Allied Chem. v Niagara Mohawk Power Corp.*, 72 NY2d 271, 276, *cert denied* 488 US 1005; *see also, Gilberg v Barbieri*, 53 NY2d 285, 291.)

In our view, however, the determination should nevertheless be confirmed, since there is substantial other evidence in the record to support it. (*See, Laspisa v Mahoney*, 198 AD2d 279.) Petitioners' challenge to the hearing evidence focuses primarily on the hearsay testimony of Detective Garcia, the only witness to testify for the TLC. "The governing standard under State law is no longer the 'legal residuum rule,' requiring some minimum quantity of admissible evidence to support an administrative determination." (*People ex rel. Vega v Smith*, 66 NY2d 130, 139.) Hearsay is admissible in an administrative proceeding and may constitute substantial evidence where it is sufficiently relevant and probative. (*See, id.; see also, Matter of O'Hara v Brown*, 193 AD2d 564.) It cannot be disputed that Garcia's testimony satisfies these criteria, at least as to the October 18, 1991, incident. Tromboli told Garcia that on that date Stanitsas brought three vehicles to the inspection facility and, later that day, after being told that "the money would be inside the car," removed $225 from one of the vehicles, $100 of which he turned over to Garcia. The TLC's determination is supported by this testimony alone.

While Garcia testified that he did not think Tromboli was "a

---

that Stanitsas had participated in the bribery of inspectors on October 18, 1991.

credible person" and that he was aware of Tromboli's problems with drugs and alcohol, he also stated that Tromboli would not act for the Department of Investigation on the days the department did not think he would be able to "handle" his assignment. In addition, Garcia's testimony that, with respect to the incidents described, he found Tromboli's information credible provides sufficient assurances that it was.

Citing *Matter of Abdur-Raheem v Mann* (85 NY2d 113) and *Hutchinson v Coughlin* (220 AD2d 419, 420), petitioners assert that Garcia's hearsay testimony cannot suffice as substantial evidence in the absence of objective circumstances demonstrating Tromboli's reliability or any such assessment of his credibility by the Hearing Officer. These cases do not support petitioners' position. First of all, they involve article 78 proceedings challenging prison disciplinary determinations based primarily on statements made by confidential inmate informants. (*Id.*; *see also, Matter of Gaston v Coughlin*, 182 AD2d 1085; *Matter of Leach v Coughlin*, 179 AD2d 1050; *Matter of Harris v Coughlin*, 116 AD2d 896, *lv denied* 67 NY2d 1047.) Under such circumstances, where the information relied upon as the basis for disciplinary action is provided by prison inmates, it is apparent that additional assurances of credibility are necessary.

In any event, in those cases where the Hearing Officer relied either on written statements made by informants or the testimony of a correction officer to whom the statements were made, the statements themselves did not provide a basis for the Hearing Officer to make such an assessment. Here, while the Hearing Officer did not explicitly make an independent assessment as to the reliability of Tromboli's statements (*see, Matter of Abdur-Raheem v Mann, supra,* 85 NY2d, at 119), that she did so can be inferred from her finding that Garcia— who found Tromboli credible as to the significant events and set forth the basis for his belief as to Tromboli's credibility— was "persuasive." In addition, Tromboli's statements were corroborated by the money he turned over to Garcia. Concur— Sullivan, P. J., Tom, Ellerin, Rubin and Andrias, JJ.

