*165 OPINION OF THE COURT
Lucy Billings, J.
Petitioner seeks to vacate a decision dated June 24, 2009, after mandatory arbitration, terminating petitioner’s employment as a high school teacher by respondent New York City Department of Education upon finding that petitioner engaged in sexual misconduct and neglected his duties. (CPLR 7511 [b] [1]; Education Law § 3020-a.) After oral argument, for the reasons explained below, the court grants the petition to the extent of vacating parts of the decision and remanding the proceeding to respondent for a redetermination whether a lesser sustained charge warrants petitioner’s termination from his position.
I. Undisputed Factual Background
During the 2006-2007 academic year, petitioner, a tenured bilingual teacher at Evander Childs High School in Bronx County, taught Student A, a Spanish-speaking student who struggled with English and expressed concerns that she would fail her Regents Examination. On June 25, 2007, when Student A had passed her 18th birthday and completed all the requirements for graduation, but not yet formally graduated from Evander Childs High School, petitioner telephoned Student A at her home. When Student A’s mother, Mother A, answered, petitioner identified himself by his first name and asked to speak to Student A. After directing her daughter to answer the telephone, Mother A listened to the conversation from another extension. While the parties dispute other details of the conversation, petitioner admits he asked Student A to “go out” with him, but claims he was joking and had telephoned to inform Student A she had passed the Regents Examination. (Verified answer, exhibit 2, at 721.) When Mother A then interjected and confronted petitioner, he hung up the telephone.
Shortly afterward Mother A and Student A complained about the telephone conversation to the school principal, who initiated an investigation. Respondent charged petitioner with sexual misconduct and gross neglect and held a hearing pursuant to Education Law § 3020-a. Student A, however, did not testify at the hearing. The arbitrator found petitioner had engaged in sexual misconduct and neglected his duties and imposed the penalty terminating him as a teacher.
*166 II. Standards for Review of a Decision after Mandatory Arbitration
A. The Interrelationship between CPLR 7511 and Education Law § 3020-a (5)
Petitioner bears the burden to show that the arbitral determination warrants vacatur. (Lackow v Department of Educ. [or “Board”] of City of N.Y., 51 AD3d 563, 568 [1st Dept 2008].) Ordinarily, the grounds on which the court may review an arbitrator’s decision are limited to her misconduct, bias, and exceeding her power and to procedural defects. (CPLR 7511 [b] [1]; Lackow v Department of Educ. [or “Board”] of City of N.Y., 51 AD3d at 567.) Because arbitration is mandatory under the Education Law, however, “the standard for judicial review . . . is more exacting than in voluntary arbitration.” (Matter of Furstenberg [Aetna Cas. & Sur. Co.—Allstate Ins. Co.], 49 NY2d 757, 758 [1980]; Matter of Utica Mut. Ins. Co. [Selective Ins. Co. of Am.], 27 AD3d 990, 992 [3d Dept 2006].) The arbitrator exceeded her power if her decision failed to accord due process, is unsupported by adequate evidence, is irrational, or is arbitrary and capricious. (CPLR 7511 [b] [1]; 7803; Education Law § 3020-a [5]; City School Dist. of the City of N.Y. v McGraham, 75 AD3d 445, 450 [1st Dept 2010]; Lackow v Department of Educ. [or “Board”] of City of N.Y., 51 AD3d at 567; see Matter of Motor Veh. Acc. Indem. Corp. v Aetna Cas. & Sur. Co., 89 NY2d 214, 223 [1996]; Matter of Utica Mut. Ins. Co., 27 AD3d at 992.)
The requirement that the decision under review be supported by adequate evidence restates CPLR 7803 (4)’s ground for review: whether a decision is “supported by substantial evidence,” defined as “such relevant proof as a reasonable mind may accept as adequate to support a conclusion.” (Matter of Miller v DeBuono, 90 NY2d 783, 793 [1997] [emphasis added]; People ex rel. Vega v Smith, 66 NY2d 130, 139 [1985]; see Matter of New York Botanical Garden v Board of Stds. & Appeals of City of N.Y., 91 NY2d 413, 422 [1998]; Matter of S & R Lake Lounge v New York State Liq. Auth., 87 NY2d 206, 210 [1995]; Matter of Gray v Adduci, 73 NY2d 741, 743 [1988]; Matter of Verdell v Lincoln Amsterdam House, Inc., 27 AD3d 388, 391 [1st Dept 2006].) Thus, when reviewing mandatory arbitration under Education Law § 3020-a (5) or under a comparable mandate, the court, through CPLR 7511 (b), uses the standards for review under CPLR 7803.
*167 B. Transferring Review for Substantial Evidence to the Appellate Division Pursuant to CPLR 7804 (g)
Although the parties do not raise the issue, CPLR 7804 (g), despite the application of section 7803 standards, does not require transferring the court’s review of the arbitral decision to the Appellate Division. CPLR 7804 (g), which requires transfer of CPLR article 78 petitions that reduce to review for “substantial evidence,” does not apply to decisions pursuant to Education Law § 3020-a (5), because the court does not actually apply CPLR 7803 (4). The court merely borrows CPLR 7803’s standards to interpret CPLR 7511 (b), which Education Law § 3020-a (5) requires be applied for judicial review. (Lackow v Department of Educ. [or “Board”] of City of N.Y., 51 AD3d at 567.)
Even if CPLR 7804 (g) does apply, it does not require a transfer here. Without considering whether substantial evidence supported the arbitral decision, the court vacates the decision on the independent bases that the arbitrator (1) exceeded her power, by failing to adhere to the applicable standards; (2) demonstrated bias, by prejudging the evidence and failing to find facts independent of her predisposition; and (3) thus violated due process. (CPLR 7511 [b] [1]; 7803 [3].)
C. Standards of Proof for Imposing the Penalty of Termination from Employment
Absent a “stigma plus,” the stigma of termination from employment, alone, does not demand a higher standard of review than substantial evidence. (Matter of Swinton v Safir, 93 NY2d 758, 763 [1999]; Miller v DeBuono, 90 NY2d at 791; Matter of Agnew v North Colonie Cent. School Dist., 14 AD3d 830, 831 [3d Dept 2005]; Matter of Malloch v Ballston Spa Cent. School Dist., 249 AD2d 797, 799-800 [3d Dept 1998].) This increased stigma derives from such accompanying effects as a listing in a registry of offenders, legal foreclosure from future employment, and accusations more serious than isolated poor judgment and serious enough to foreclose employment in petitioner’s field as a natural consequence. (Swinton v Safir, 93 NY2d at 764; Miller v DeBuono, 90 NY2d at 791; Matter of Lee TT. v Dowling, 87 NY2d 699, 708 [1996]; see Matter of Talamo v Murphy, 38 NY2d 637, 640 [1976]; Agnew v North Colonie Cent. School Dist., 14 AD3d at 831; Matter of Williams v Nicoletti, 295 AD2d 353, 354 [2d Dept 2002]; Malloch v Ballston Spa Cent. School Dist., 249 AD2d at 799-800.) The charges against petitioner fall within this rubric. While his name has not been *168 added to a registry, and the charges amount to only a single instance, a telephone conversation, accusations of a teacher’s sexual misconduct toward a student brand the teacher with a “stigma plus” inherently likely to foreclose future employment far more than unsafe driving by a bus driver, failing a drug test, or stealing, for example. (Agnew v North Colonie Cent. School Dist., 14 AD3d at 831; Malloch v Ballston Spa Cent. School Dist., 249 AD2d at 799-800; see Williams v Nicoletti, 295 AD2d at 354.)
Charges that potentially stigmatize a prospective employee to this extent must be supported by a preponderance of the evidence, rather than substantial evidence. Application of the preponderance of evidence standard demands a de novo review of the record. (See e.g. Matter of Allesandro [State Commn. on Jud. Conduct], 13 NY3d 238, 241, 249 [2009]; Matter of Hart [State Commn. on Jud. Conduct], 7 NY3d 1, 5 [2006]; Matter of Mulroy, 94 NY2d 652, 656 [2000].)
Substantial evidence “is less than a preponderance of the evidence.” (Miller v DeBuono, 90 NY2d at 793; 300 Gramatan Ave. Assoc. v State Div. of Human Rights, 45 NY2d 176, 180 [1978].) Application of the substantial evidence standard demands only that “a given inference is reasonable and plausible, not necessarily the most probable.” (Miller v DeBuono, 90 NY2d at 793.) Substantial evidence thus may support inconsistent inferences and findings. (Id.; Matter of Berenhaus v Ward, 70 NY2d 436, 443-444 [1987].)
Here, the court need not determine which standard applies, because no specifications against petitioner that satisfy the substantial evidence standard fail to satisfy the higher preponderance of evidence standard. (Miller v DeBuono, 90 NY2d at 793-794; Lee TT. v Dowling, 87 NY2d at 703; see Agnew v North Colonie Cent. School Dist., 14 AD3d at 831; Williams v Nicoletti, 295 AD2d at 354; Malloch v Ballston Spa Cent. School Dist., 249 AD2d at 799.) The arbitrator, in any event, assumed the preponderance of evidence standard applied, even if her findings may not reflect it. The additional standard applicable to the penalty of termination, moreover, requiring its vacatur if the penalty is “shocking to the court’s sense of fairness” (Lackow v Department of Educ. [or “Board”] of City of N.Y, 51 AD3d at 569), provides a further check on disciplinary measures by judicial review. (Matter of Harris v Mechanicville Cent. School Dist., 45 NY2d 279, 284-285 [1978]; Matter of Weinstein v Department of Educ. of City of N.Y., 19 AD3d 165 [1st Dept *169 2005]; Matter of Figuereo v Lipsman, 25 AD3d 699, 702 [2d Dept 2006]; Matter of Johnson v Town of Arcade, 281 AD2d 894, 895 [4th Dept 2001]; see Matter of Scahill v Greece Cent. School Dist., 2 NY3d 754, 756 [2004]; Matter of Winters v Board of Educ. of Lakeland Cent. School Dist., 99 NY2d 549, 550 [2002]; Matter of Chaplin v New York City Dept. of Educ., 48 AD3d 226, 227 [1st Dept 2008]; Krinsky v New York City Dept. of Educ., 28 AD3d 353 [1st Dept 2006].)
D. Hearsay
Substantial evidence may comprise only hearsay evidence that does not qualify as an exception to the rule against hearsay, as long as it is “sufficiently relevant and probative.” (Matter of Foster v Coughlin, 76 NY2d 964, 966 [1990]; Gray v Adduci, 73 NY2d at 742; Matter of Perez v Wilmot, 67 NY2d 615, 616-617 [1986]; 49th St. Mgt. Co. v New York City Taxi & Limousine Commn., 277 AD2d 103, 106 [1st Dept 2000].) Nonetheless, due process may require the hearsay evidence that constitutes substantial evidence sustaining a charge to be more than inadmissible hearsay that initiated an investigation or other disciplinary action regarding alleged misconduct. (Miller v DeBuono, 90 NY2d at 793; People ex rel. Vega v Smith, 66 NY2d at 140-141.) Whether, to afford petitioner the due process rights of confrontation and cross-examination, the disciplinary authority must present evidence that petitioner may probe and test, be it the charging witness or other evidence supporting the charge beyond a written report of the charge, may depend on the administrative hearing’s purpose. (Id.; see Miller v DeBuono, 90 NY2d at 793.)
If the mandated purpose is only to allow petitioner to present witnesses and other evidence in his defense, then it does not require the disciplinary authority to present the charging party or other adverse evidence. (People ex rel. Vega v Smith, 66 NY2d at 141-142, 142 n 3.) The factfinder may rely on a disciplinary report and simply afford petitioner the opportunity to bring the report’s author or another charging witness to testify and thus allow petitioner to question and the factfinder to assess the witness’ veracity. (Id. at 142 n 3.) As long as the hearing officer considers the evidence petitioner offers, the hearing satisfies due process. (Id. at 142.)
The mandated purpose of hearings under Education Law § 3020-a (3) (c) is more extensive, affording petitioner employee more than “a reasonable opportunity to defend himself.” Although section 3020-a (3) (c) expressly does “not require compli *170 anee with technical rules of evidence,” in conducting hearings (Education Law § 3020-a [3] [c]; Matter of Syquia v Board of Educ. of Harpursville Cent. School Dist., 80 NY2d 531, 536 [1992]), the statutory purpose does mandate “full and fair disclosure of .. . [the] evidence against the employee by the employing board.''’ (Education Law § 3020-a [3] [c] [i] [emphasis added]; see Matter of Scanlan v Buffalo Pub. School Sys., 90 NY2d 662, 677 [1997]; Syquia v Board of Educ. of Harpursville Cent. School Dist., 80 NY2d at 536-537; Matter of Moro v Mills, 70 AD3d 1269, 1270-1271 [3d Dept 2010].)
Were the statutory purpose is limited to allowing petitioner to present a defense, “any evidence in the record that could support the conclusion reached by the disciplinary board” would satisfy due process. (People ex rel. Vega v Smith, 66 NY2d at 142.) Such evidence, therefore, could be limited to an inadmissible hearsay report that the disciplinary authority relied on. (Id. at 142 n 3.) This standard, however, is “less stringent than a ‘substantial evidence’ standard.” (Id. at 142.) Under Education Law § 3020-a (3) (c), in contrast, where respondent must sustain its statutory burden at a hearing to set forth fully and fairly the “evidence against the employee,” a more stringent standard, respondent thus must present more than hearsay that initiated the disciplinary action. (See Scanlan v Buffalo Pub. School Sys., 90 NY2d at 677; Syquia v Board of Educ. of Harpursville Cent. School Dist., 80 NY2d at 537; Matter of Kaufman v New York City Dept. of Hous. Preserv. & Dev., 45 AD3d 257, 258 [1st Dept 2007].)
A preponderance of the evidence likewise may include hearsay that does not qualify as an exception (Matter of Poli K., 34 AD3d 354 [1st Dept 2006]), but must include more than the hearsay that initiated respondent’s investigatory and disciplinary proceedings. (Miller v DeBuono, 90 NY2d at 793; see Matter of Nassau County Dept. of Social Seros, v Denise J., 87 NY2d 73, 79 [1995]; Matter of Nicole H., 12 AD3d 182, 183 [1st Dept 2004].) Finally, under either evidentiary standard, whenever a witness to the conduct in question does not testify, whether respondent uses the witness’ hearsay or not, the factfinder may, of course, “draw the strongest possible inference against respondent.” (Matter of Poli K., 34 AD3d at 355; see Nassau County Dept. of Social Servs, v Denise J., 87 NY2d at 79-80; People v Gonzalez, 68 NY2d 424, 427 [1986]; Matter of Jazmyn R. [Luceita F.], 67 AD3d 495 [1st Dept 2009]; Matter of Nicole H., 12 AD3d at 183.)
*171 E. Student A’s Failure to Testify
While the arbitrator was not required to draw any adverse inference, respondent’s failure to present Student A as a witness at the hearing at least warranted the factfinder’s consideration, particularly given the mandate for “full and fair disclosure of. . . [the] evidence against the employee by the employing board.” (Education Law § 3020-a [3] [c] [i] [emphasis added]; see Scanlan v Buffalo Pub. School Sys., 90 NY2d at 677; Syquia v Board of Educ. of Harpursville Cent. School Dist., 80 NY2d at 536-537.) Although Mother A, compelled by subpoena, testified as a witness to the conversation on June 25, 2007, when petitioner, as he admits, asked Student A to “go out,” Student A is the only witness other than petitioner to both the conversation and its precipitating history. This background explains and supports petitioner’s insistence that he was joking and substantiates the overriding purpose of the telephone conversation: to inform a student who repeatedly had expressed anxiety over possibly failing her Regents Examination that she had passed and verbally join in her elation. She thus was the only witness fully knowledgeable about the critical issues and available to respondent, the charging party and proponent of the claim that petitioner’s conduct warranted nothing less than his discharge. (People v Gonzalez, 68 NY2d at 427-428, 430, 431 n 2; Kaufman v New York City Dept. of Hous. Preserv. & Dev., 45 AD3d at 258.) Her role as a complainant to the school principal and her relationship both to her co-complainant, her mother who did testify (People v Gonzalez at 429-430), and to the critical facts made “it natural to expect” respondent to have brought her as a witness to testify in its favor. (Id. at 429, 431; Minichiello v Supper Club, 296 AD2d 350, 352 [1st Dept 2002]; Dayanim v Unis, 171 AD2d 579, 580 [1st Dept 1991].)
Although petitioner raised respondent’s failure to present Student A as a witness, and the arbitrator observed that “Student A was unavailable to testify” (verified petition, exhibit A, at 4), and was outside New York when the hearing concluded, until then the hearing proceeded on four dates, over long intervals: October 27 and 29, November 17, and December 15, 2008, and April 29, 2009. (Verified petition, exhibit A, at 4, 9.) Yet respondent offered, and the arbitrator sought, no explanation for not presenting her testimony on one of these dates or another date within this span of six months. (People v Gonzalez, 68 NY2d at 427-428; Crowder v Wells & Wells Equip., Inc., 11 AD3d 360, 361 [1st Dept 2004]; Minichiello v Supper *172 Club, 296 AD2d at 352; see Cornell Univ. v Gordon, 76 AD3d 452, 453 [1st Dept 2010]; Matter of Jazmyn R. [Luceita F.], 67 AD3d 495 [2009]; Kaufman v New York City Dept. of Hous. Preserv. & Dev., 45 AD3d at 258; Matter of Padilla v Levy, 300 AD2d 62, 63 [1st Dept 2002].) Particularly given her mother’s involvement and Student A’s age, nothing suggests that her whereabouts were unknown; that she could not be contacted; that, even if she was ultimately outside the state, she was away this entire period and too far away to be transported here; or that she was incapacitated this entire period. (People v Gonzalez, 68 NY2d at 428-429.)
Petitioner’s uncontradicted testimony demonstrating the extra academic support and encouragement petitioner had extended to Student A and her complicity in the events that precipitated their conversation on June 25, 2007 (see Scanlan v Buffalo Pub. School Sys., 90 NY2d at 675) also warranted the arbitrator’s consideration as an explanation for her absence. Nowhere did the arbitrator find his testimony inconsistent or unworthy of belief. (E.g. Matter of Serras v Kerik, 299 AD2d 212, 213 [1st Dept 2002]; Moro v Mills, 70 AD3d at 1270; see Scanlan v Buffalo Pub. School Sys., 90 NY2d at 677; Foster v Coughlin, 76 NY2d at 966; Lackow v Department of Educ. [or “Board”] of City of N.Y., 51 AD3d at 568; Austin v Board of Educ. of City School Dist. of City of N.Y., 280 AD2d 365 [1st Dept 2001].)
No evidence indicated Student A truthfully could deny that she was comfortable joking with petitioner; that in May 2007 she danced into his classroom and around his desk, gleefully proclaiming to him she had turned 18 years old, so now he could take her to dance; and that his remark during their ensuing telephone conversation responded in kind to her familiar conduct in his classroom. No evidence indicated she truthfully could deny her indebtedness to him for her academic progress. It would have been difficult, at best, for her to testify, unless her testimony corroborated his, and confront him with testimony that parroted the otherwise uncorroborated hearsay statements Investigator La Cherra and Principal Ortiz-Urena attributed to her. It likewise would have been difficult for her to testify in front of the school officials, unless she substantiated the accounts by the school investigator and principal of her statements to them. (See People v Gonzalez, 68 NY2d at 427.)
Although these statements did not deny the contents of petitioner’s above testimony, she recounted to the school of *173 ficials other, undeniably sexual and inculpatory comments to her by petitioner. (1) He had not “been with a woman” in a long time and wanted her “to have sex” with him. (Verified petition, exhibit A, at 7.) (2) He approached her at school on June 26, 2007 and instructed her not to “tell anyone about the phone call, because they would all get in trouble.” (Id.) Significantly, however, the arbitrator dismissed the charges based on his alleged comments that he had not “been with a woman” in a long time and wanted Student A “to have sex” with him, expressly because “Student did not testify.” (Id. at 11 [emphasis added].)
Had Student A testified, then of course the arbitrator could have assessed whether self-interest and a motive to reduce her complicity affected her credibility. (Foster v Coughlin, 76 NY2d at 966; Berenhaus v Ward, 70 NY2d at 443-444; Serras v Kerik, 299 AD2d at 213; Matter of Ausch v Commissioner of State of N.Y. Div. of Hous. & Community Renewal, 166 AD2d 704, 705 [2d Dept 1990]; see Matter of Nash v Kelly, 63 AD3d 483 [1st Dept 2009]; Matter of Ayala v Ward, 170 AD2d 235 [1st Dept 1991]; Matter of Crossman-Battisti v Traficanti, 235 AD2d 566, 567 [3d Dept 1997].) As a result of her absence, however, her hearsay statements are the only evidence against petitioner presented by respondent as to circumstances surrounding the conversation on June 25, 2007, its subject and tenor, and thus how his inquiry about “going out” reasonably may be interpreted. (See Matter of Nash v Kelly, 63 AD3d 483 [2009]; Matter of Stafford v Hernanadez, 52 AD3d 304, 305 [1st Dept 2008].) It is questionable in the first instance, even if no adverse inference is drawn, whether her hearsay on this critical issue constitutes full and fair disclosure of the evidence against him (Education Law § 3020-a [3] [c] [i]), a preponderance of the evidence, or even substantial evidence, absent any showing that she in fact was unavailable. (See Matter of Jazmyn R. [Luceita F.], 67 AD3d 495 [2009]; Kaufman v New York City Dept. of Hous. Preserv. & Dev., 45 AD3d at 258; Matter of Poli K., 34 AD3d 354 [2006]; Matter of LaPorta v New York State Bd. of Parole, 251 AD2d 119 [1st Dept 1998].)
Hearsay from a student who participated in the charged misconduct, to investigatory and disciplinary authorities, moreover, is fraught with indicia of unreliability, unless her candor is assessed through her appearance and testimony before the fact-finder. (Berenhaus v Ward, 70 NY2d at 443-444; People v Reid, 69 NY2d 469, 477 [1987]; see Foster v Coughlin, 76 NY2d at 966; Serras v Kerik, 299 AD2d at 213; Matter of Ayala v Ward, *174 170 AD2d 235 [1991].) Tellingly, the principal described her single interview with Student A:
“She was very apprehensive. She seemed like, nervous about what — the whole thing that was happening. She was upset but more — like when you have your mom next to you and things are not going right and you’re scared, that scared kind of apprehensive look about them that’s — . But the mom had dominated the conversation. So, she really was afraid of the mom’s — you know, like saying here about calling the police, calling the newspaper, calling everybody.” (Verified petition, exhibit B; verified answer, exhibit 2, at 434.)
“Q. . . . [Mother A] dominated the conversation with you, correct?
“A. Yes.
“Q. And you never interviewed Student A by herself, not in the presence of her mother on that date, did you?
“A. No, I did not.
“Q. . . . Student A appeared to be very nervous sitting next to her mother when you met with her, correct?
“A. Yes, in addition to — looking frightful.” {Id. at 451-452.)
Independently, Student A’s interview by the investigator may lack dependability and hence probative value (Foster v Coughlin, 76 NY2d at 966; Berenhaus v Ward, 70 NY2d at 444), because he spoke no Spanish and conducted the interview in English, a language with which Student A struggled. (Verified petition, exhibit A, at 12; see People v Pavao, 59 NY2d 282, 293 [1983]; Mehmood v Wong, 18 AD3d 518 [2d Dept 2005].)
Absent the factfinder’s opportunity to determine her veracity, her hearsay may require corroboration to constitute substantial evidence supporting the arbitrator’s interpretation of the telephone conversation. (Berenhaus v Ward, 70 NY2d at 443-444; 49th St. Mgt. Co. v New York City Taxi & Limousine Commn., 277 AD2d 103, 107 [2000]; Matter of Monessar v New York State Liq. Auth., 266 AD2d 123 [1st Dept 1999]; Matter of Brinson v Safir, 255 AD2d 247 [1st Dept 1998]; see Matter of O’Hara v Brown, 193 AD2d 564, 565 [1st Dept 1993].) Absent any corroboration of her hearsay statements discernible from this record, there is no assurance of their credibility. (E.g. 49th *175 St. Mgt. Co. v New York City Taxi & Limousine Commn., 277 AD2d at 107; Matter of Brinson v Safir, 255 AD2d 247 [1998].) Finally, had the arbitrator drawn an adverse inference from Student A’s failure to testify and presumed she would have testified that petitioner’s remark was the sequel to a prior joke by her, not a serious invitation on a date, and merely put to rest her anxiety and confirmed her elation over the Regents Examination, little support would have remained for his discharge.
III. The Arbitrator’s Failure to Articulate and Demonstrate Adherence to the Applicable Standards
Before considering the arbitral decision’s merits pursuant to Lackow v Department of Educ. (or “Board”) of City of N.Y. (51 AD3d at 567) and CPLR article 78, the court vacates the decision because the arbitrator exceeded her authority under Education Law § 3020-a. (CPLR 7511 [b] [1] [iii].) She failed to adhere not only to Education Law § 3020-a (3) (c) (i)’s mandate and hold respondent to “full and fair disclosure of. . . [the] evidence against the employee,” as discussed above, but also to section 3020-a (4) (a)’s constraints. Education Law § 3020-a (4) (a) mandates that the arbitrator render a written decision including her “findings of fact on each charge” and “her conclusions with regard to each charge based on said findings.” CPLR 7511 (b) (1) (iii) also provides for vacating the decision if the “arbitrator ... so imperfectly executed” her authority that her findings or conclusions “upon the subject matter submitted” (CPLR 7511 [b] [1] [iii]), here the charges, were “ambiguous and indefinite” and failed “to present a coherent, rational determination” (Matter of Utica Ins. Co., 27 AD3d at 992), and “fully determine” issues submitted. (Matter of Herman v Cupero, 12 AD3d 674, 675 [2d Dept 2004]; see Matter of Board of Educ. of Amityville Union Free School Dist. v Amityville Teacher’s Assn., 62 AD3d 992, 993 [2d Dept 2009].)
The arbitrator also exceeded her authority, which Education Law § 3020-a confers here, because she failed to articulate the applicable standards or demonstrate that she understood them, by applying them or otherwise (Matter of New York City Tr. Auth. v Transport Workers Union of Am., Local 100, 14 NY3d 119, 123-124 [2010]), or in setting forth “findings of fact on each charge” and “conclusions with regard to each charge based on said findings.” (Education Law § 3020-a [4] [a] [emphases added].) Although the basis for having “imperfectly executed” her authority under CPLR 7511 (b) (1) (iii) is more than a lack *176 of “clarity of . . . reasoning” (Purpura v Bear Stearns Cos., 238 AD2d 216 [1st Dept 1997]), and her decision may leave the parties capable of determining that petitioner is discharged, they are incapable of determining her findings and conclusions regarding each charge (Education Law § 3020-a [4] [a]), as defined by the applicable standards. (Board of Educ. of Amityville Union Free School Dist. v Amityville Teacher’s Assn., 62 AD3d at 994; Matter of Utica Ins. Co., 27 AD3d at 992; Herman v Cupero, 12 AD3d at 675.) This departure outside the specific limitations of section 3020-a (4) (a), as well as (3) (c) (i), and lack of adherence to defined charges with definitive findings and conclusions regarding each charge, exceeding the arbitrator’s power or imperfectly executing it, provide independent grounds to vacate her decision. (CPLR 7511 [b] [1] [iii]; Matter of Brijmohan v State Farm Ins. Co., 92 NY2d 821, 822-823 [1998]; Matter of Silverman [Benmor Coats], 61 NY2d 299, 309 [1984]; Pharma Consult, Inc. v Nutrition Tech. LLC, 25 AD3d 421, 422 [1st Dept 2006]; Matter of New York City Tr. Auth. v Transport Workers’ Union of Am., Local 100, AFL-CIO, 306 AD2d 486, 487 [2d Dept 2003]; see City School Dist. of the City of N.Y. v McGraham, 75 AD3d at 450; Lackow v Department of Educ. [or “Board”] of City of NY, 51 AD3d at 567.)
The applicable standards defining the charges under Education Law § 2590-h (16) are the regulations promulgated by respondent’s Chancellor (verified petition, exhibit A, at 3), and the contract provisions in the record from the collective bargaining agreement (CBA) between respondent and the United Federation of Teachers, governing respondent and its teachers. (Verified answer, exhibit 6.) Serious misconduct and sexual misconduct, as well as sexual harassment, as discussed below, are different offenses comprised of different elements under the CBA and the Chancellor’s regulations, offenses and elements that the arbitrator conflates. Nowhere does she articulate the elements of the offenses charged. She cites only to “Section 6,” without identifying the governing provisions from which section 6 derives, but which the court assumes are CBA article 21, § G, containing a subsection G (6). (Verified petition, exhibit A, at 3.) Respondent’s record of the disciplinary and arbitration proceedings presented to the court, however, includes only part of the CBA and does not include CBA appendix G, to which CBA article 21, § G (6) refers. (Verified answer, exhibit 6; see verified petition, exhibit C.) The arbitrator also fails to specify the elements of other charges, including neglect of duty and conduct unbecoming a teacher.
*177 IV The Arbitrator’s Bias
The arbitrator sustained specification 4, that between May 25 and June 25, 2007, petitioner telephoned Student A approximately 11 times, on the nonevidentiary basis that “[i]t is difficult for this Arbitrator to believe that all eleven calls were school-related, especially in light of these collective charges.” (Verified petition, exhibit A, at 15.) Despite the arbitrator’s recitation that her determination must be based “solely on the record of the proceedings” (verified petition, exhibit A, at 9), neither her unsupported hunch nor the mere charges constitute evidence. (See e.g. Johnson v Town of Arcade, 281 AD2d at 895.) The arbitrator’s reliance, by her own concession, on the mere fact that petitioner had been charged with four specifications, as if they were evidence, demonstrates she prejudged the outcome of the hearing, exhibiting bias that prejudiced petitioner’s rights (Matter of 1616 Second Ave. Rest. v New York State Liq. Auth., 75 NY2d 158, 161-162 [1990]; Artists & Craftsmen Bldrs. v Schapiro, 232 AD2d 265, 266 [1st Dept 1996]) and violating due process. (See Barnes v Washington Mut. Bank, FA, 40 AD3d 357, 358 [1st Dept 2007].)
Whether or not the arbitrator actually held a preconceived view of the proved material facts in this proceeding (Matter of 1616 Second Ave. Rest. v New York State Liq. Auth., 75 NY2d at 161), the excerpt from her decision quoted above “nonetheless gave . . . that impression.” (Id. at 164.) A disinterested reader of that portion of her decision could well regard it as evidencing her belief that petitioner’s telephone conversations were not school-related and that the collective charges were true, even if unproved, and well conclude that she “in some measure adjudged the facts . . . of a particular case in advance of hearing” the proved facts. (Id. at 162.) Her remarks leave no impression that the conversations might be all school-related and the charges wholly unfounded. Instead, the biased impression she thus gave “lent an impermissible air of unfairness to the proceeding.” (Id. at 164.)
An “impartial decision maker is a core guarantee of due process, fully applicable to adjudicatory proceedings before administrative agencies.” (Id. at 161.) The arbitrator’s demonstrated bias, in violation of due process, by itself also provides a basis for vacating her decision. (CPLR 7511 [b] [1] [ii]; 7803 [3].)
*178 V Absence of Substantial Evidence or a Preponderance of the Evidence
The specifications that the arbitrator found petitioner committed include the following.
1. Specification 3 (2): Petitioner asked Student A to go out.
Petitioner admitted this conduct. A single, admitted instance of petitioner asking Student A to “go out,” however, is susceptible of a nonsexual connotation. Absent evidence that he intended the “going out” to be sexual, the inquiry may not, under the CBA, “reasonably be interpreted as soliciting a sexual relationship” (verified petition, exhibit C; verified answer, exhibit 6, CBA art 21, § G [6]) rather than the inappropriate joking alleged by petitioner or an inappropriate suggestion of an actual, albeit nonsexual, encounter. Nor does it amount to “serious or repeated verbal abuse (as defined in the Chancellor’s Regulations) of a sexual nature” under the CBA. (Id.) Chancellor’s Regulation A-830 prohibits “sexual harassment” of students by employees, consisting of “sexual advances, requests for sexual favors and other verbal and physical conduct of a sexual nature.” Respondent never charged sexual harassment, yet claimed a violation of this regulation. In any event, petitioner’s single inquiry or remark does not satisfy this definition of prohibited conduct either. Nor did the inquiry or remark amount to simply the verbal abuse prohibited under Chancellor’s Regulation A-421, absent evidence that the inquiry tended “to threaten physical harm,” “cause fear or physical or mental distress,” “belittle . . . students,” or “subject students to ridicule.”
To be sure, petitioner’s joking or suggestion of a nonsexual encounter still may be inappropriate conduct by a teacher, a degree of wrongdoing petitioner forthrightly acknowledges. Absent further circumstances suggesting a sexual liaison, however, the single request to “go out,” under the circumstances shown by the record, does not constitute the sexual misconduct found by the arbitrator. The conduct may, in the context of other sexual innuendos, together constitute sexual misconduct, but by itself does not. Of course the conduct may, by itself, still constitute a lesser charge.
Under the CBA, sexual misconduct is the only form of serious misconduct alleged. Whether petitioner’s inquiry constitutes the neglect of duty, conduct prejudicial to the discipline, good order, or efficiency to be maintained by a teacher, or conduct *179 unbecoming the position, each charged by respondent, is beyond this record, since the arbitrator made no such findings independently of sexual misconduct, as a form, of serious misconduct.
2. Specification 1 (1) (e): Petitioner instructed Student A not to disclose to her mother that he was Student A’s teacher.
A preponderance of the evidence establishes specification 1 (1) (e), based on Mother A’s unimpeached testimony that she heard petitioner make the statement when she remained on the telephone line during Student A’s conversation with him. Although petitioner denied this statement in his testimony, the investigator’s account of Student A’s statements to him, albeit hearsay and of questionable reliability as discussed above, corroborated Mother A’s firsthand account.
Student A’s unsworn written statement (verified petition, exhibit C), similarly hearsay and of uncertain reliability, is not admissible toward a preponderance of the evidence or toward substantial evidence, because it is part of the hearsay complaint to respondent that initiated its investigatory and disciplinary action. (Miller v DeBuono, 90 NY2d at 793; People ex rel. Vega v Smith, 66 NY2d at 140-141; Matter of Poli K., 34 AD3d 354 [2006]; see Nassau County Dept. of Social Servs, v Denise J., 87 NY2d at 79; Matter of Nicole H., 12 AD3d at 183.) The investigator’s account of his interview with Student A, in contrast, was not part of the initial complaint, but was part of the ensuing investigation.
Even though the arbitrator never explicitly found Mother A credible or petitioner less than credible, the arbitrator implicitly credited the mother’s corroborated testimony over petitioner’s contrary testimony. (Stafford v Hernandez, 52 AD3d at 305; see Matter of Nash v Kelly, 63 AD3d 483 [2009]; Serras v Kerik, 299 AD2d at 213; Moro v Mills, 70 AD3d at 1270; Ausch v Commissioner of State of N.Y. Div. of Hous. & Community Renewal, 166 AD2d at 705.) Even though her testimony was corroborated by mere hearsay, the unreliability of the corroboration is no basis to disturb the factfinder’s implicit credibility determination. (Matter of Brinson v Safir, 255 AD2d 247 [1998]; Moro v Mills, 70 AD3d at 1271; see Matter of Nash v Kelly, 63 AD3d 483 [2009]; Stafford v Hernandez, 52 AD3d at 305.)
3. Specification 2 (1): Petitioner instructed Student A not to disclose to anyone what happened; otherwise all of them would be in trouble.
A preponderance of the evidence also establishes specification 2 (1), based on the testimony of both Mother A and the *180 investigator regarding Student A’s description of petitioner’s warning to her the day after their telephone conversation. Although all this testimony is hearsay, it is admissible in this administrative proceeding because the statements testified to were not part of the underlying complaint that initiated the investigation. (Miller v DeBuono, 90 NY2d at 793; People ex rel. Vega v Smith, 66 NY2d at 140-141; Matter of Poli K., 34 AD3d 354 [2006]; see Nassau County Dept. of Social Servs. v Denise J., 87 NY2d at 79; Matter of Nicole H., 12 AD3d at 183.)
In rebuttal, petitioner presented his own testimony and the testimony of Francis Midi, a social studies teacher, who attested that he accompanied petitioner on June 26, 2007 while he was in the school auditorium and spoke to Student A. Like petitioner, Midi denied that petitioner made comments of the sort described in this specification. Petitioner and Midi thus testified upon their personal knowledge, in contrast to the uniformly hearsay testimony supporting this specification. Nevertheless, an impartial arbitrator was permitted to credit the supporting testimony over petitioner’s self-interested testimony and the testimony of Midi, who on cross-examination revealed that he may have borne a grudge against the school system, and petitioner may have returned to the auditorium when Student A was still there, but when Midi did not observe petitioner. (Serras v Kerik, 299 AD2d at 213; Crossman-Battisti v Traficanti, 235 AD2d at 567; Ausch v Commissioner of State of N.Y. Div. of Hous. & Community Renewal, 166 AD2d at 705.)
VI. Penalty
In determining the penalty, the arbitrator is to be guided by the teacher’s past record (see New York City Tr. Auth. v Transport Workers Union of Am., Local 100, 14 NY3d at 124), whether his misconduct escalated from prior similar instances of misconduct (Stafford v Hernandez, 52 AD3d at 305), was repetitive, or continued in a pattern. (Scahill v Greece Cent. School Dist., 2 NY3d at 756; Lackow v Department of Educ. [or “Board”] of City of N.Y., 51 AD3d at 569; Krinsky v New York City Dept. of Educ., 28 AD3d 353 [2006]; Matter of Monessar v New York State Liq. Auth., 266 AD2d 123 [1999].) Here, the record does not suggest that petitioner’s single, ambiguous remark to a student and warnings to her not to disclose it “were part of a pattern” or involved a “persistent unwillingness to accept the directives of his superiors,” warranting dismissal. (Harris v Mechanicville Cent. School Dist., 45 NY2d at 285.) In fact his *181 conduct involved no insubordination or misappropriation of school time. (See Scahill v Greece Cent. School Dist., 2 NY3d at 756; Krinsky v New York City Dept. of Educ., 28 AD3d 353 [2006].) After an unblemished record of exemplary service, as the arbitrator found, his inappropriate remark flowed from extending himself beyond his assigned duties to provide extra academic support and encouragement to students. (Verified petition, exhibit A, at 15-16; Matter of Weinstein v Department of Educ. of City of N.Y., 19 AD3d 165 [2005]; Figuereo v Lipsman, 25 AD3d at 702; Matter of Schnaars v Copiague Union Free School Dist., 275 AD2d 462, 463 [2d Dept 2000]; see Krinsky v New York City Dept. of Educ., 28 AD3d 353 [2006].)
The misconduct’s immediate context also is to be considered. Petitioner’s inappropriate remark and follow-up warnings were not part of classroom instruction. (See Lackow v Department of Educ. [or “Board”] of City of N.Y., 51 AD3d at 569.) Student A was an adult and had completed school other than the formal graduation ceremony a few days later and was no longer subject to petitioner’s teaching, grading, or discipline. (Figuereo v Lipsman, 25 AD3d at 702.) Petitioner’s actions will not compromise his future ability to teach, grade, discipline, or perform related duties. (See Chaplin v New York City Dept. of Educ., 48 AD3d at 227.) Nor does the record suggest the “prospect of recurrence” of similar derelictions by petitioner or fellow teachers that need to be deterred. (Harris v Mechanicville Cent. School Dist., 45 NY2d at 284; see Figuereo v Lipsman, 25 AD3d at 702.) Instead, petitioner’s admission of and remorse for his poor judgment in making the remark demonstrate that it is improbable he will “act in a similar manner if placed in the same situation” or even a remotely similar situation in the future. (Winters v Board of Educ. of Lakeland Cent. School Dist., 99 NY2d at 550.)
The arbitrator failed to consider most of these mitigating circumstances, despite their support in the record. (Figuereo v Lipsman, 25 AD3d at 702.) Based on these factors, termination of employment is excessive and shocks the conscience as a penalty for conduct that boils down to a single, ambiguous remark by a veteran teacher with no prior disciplinary record. (Harris v Mechanicville Cent. School Dist., 45 NY2d at 284-285; Matter of Weinstein v Department of Educ. of City of N.Y., 19 AD3d 165 [2005]; Matter of Hull Ave. Pharm. v Kaladjian, 226 AD2d 293, 294 [1st Dept 1996]; Johnson v Town of Arcade, 281 AD2d at 895.)
*182 VIL Conclusion
Consequently, the court vacates the arbitrator’s decision dated June 24, 2009, and remands this proceeding to respondent to:
(1) dismiss the finding of sexual misconduct and all specifications other than specifications 1 (1) (e), 2 (1), and 3 (2);
(2) conduct a new hearing before a new arbitrator to determine whether the surviving specifications constitute the remaining sustained charge of neglect of duty, insofar as this neglect is defined under the CBA or Chancellor’s regulations; and
(3) redetermine the penalty. (Rob Tess Rest. Corp. v New York State Liq. Auth., 49 NY2d 874 [1980]; Sawtelle v Waddell & Reed, Inc., 21 AD3d 820, 821 [1st Dept 2005]; Sands Bros. & Co. v Generex Pharms., 279 AD2d 377, 378 [1st Dept 2001]; Wong v McGrath-McKechnie, 271 AD2d 321 [1st Dept 2000].)
This decision constitutes the court’s order and judgment on the petition. (CPLR 7511.) The court will retain jurisdiction over this proceeding, however, pending respondent’s decision after the new hearing. After that decision, either party may move by order to show cause for further relief consistent with this decision.